Filed 4/3/13; pub. order 4/30/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PAUL D. COPENBARGER, | |
| Plaintiff and Appellant, | G046273 |
| v. | (Super. Ct. No. 30-2011-00479442) |
| MORRIS CERULLO WORLD EVANGELISM et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from orders of the Superior Court of Orange County, Francisco F. Firmat, Judge. Reversed and remanded.

Paul D. Copenbarger, in pro. per.; John L. Dodd & Associates and John L. Dodd for Plaintiff and Appellant.

Darryl J. Paul for Defendants and Respondents.

\*        \*        \*

## INTRODUCTION

Paul D. Copenbarger, acting individually and derivatively on behalf of Newport Harbor Offices & Marina, LLC (NHOM), appeals from the order granting the special motion to strike his complaint pursuant to the anti-SLAPP statute, Code of Civil Procedure section 425.16 (further code references are to the Code of Civil Procedure unless otherwise specified).[1]

NHOM is the sublessee, and defendant/respondent Morris Cerullo Worldwide Evangelism (Cerullo) is the sublessor under a sub-ground lease of real property in Newport Beach. After Cerullo served NHOM with a three-day notice to cure or quit, Copenbarger filed a complaint asserting causes of action against Cerullo, Plaza del Sol Real Estate Trust (Plaza del Sol), Roger Artz, Dennis A. D'Alessio, and Vertical Media Group, Inc. (VMG) (collectively, Respondents), for declaratory relief, breach of contract, and intentional interference with contract.[2] Soon thereafter, Cerullo filed an unlawful detainer action against NHOM, and all Respondents brought their successful anti-SLAPP motion to strike Copenbarger's complaint.

The dispositive issue on appeal is whether the causes of action asserted in Copenbarger's complaint arose out of Cerullo's petitioning activity—protected under section 425.16, subdivision (b)(1)—of service of the three-day notice to cure or quit and the subsequent unlawful detainer action. We conclude that while the three-day notice might have triggered the complaint, the evidence in the record demonstrates the complaint was based on an underlying dispute over NHOM's repair and maintenance obligations under the sublease and other unprotected activities. We therefore reverse the order granting the anti-SLAPP motion and the order awarding Respondents attorney fees.

---

[1] SLAPP stands for strategic lawsuit against public participation. (*Nguyen-Lam v. Cao* (2009) 171 Cal.App.4th 858, 862, fn. 1.)

[2] Copenbarger also named NHOM as a defendant, but it is not a party to this appeal.

## FACTS AND ALLEGATIONS OF THE COMPLAINT

In 1963, John J. Jakosky and Katherine F. Jakosky, as lessors, and F. David Young, as lessee, entered into a 55-year ground lease (the Ground Lease) of unimproved real property (the Property) in Newport Beach. In 1987, a multistory office building and marina were constructed on the Property by the lessee at the time. Under the terms of the Ground Lease, the lessee is the owner of any improvements constructed on the Property.

Sometime before December 2003, Cerullo became the lessee under the Ground Lease. In January 2004, Cerullo entered in a sub-ground lease of the Property (the Sublease) with NHOM for a term expiring in November 2018. NHOM had been formed by Kent A. McNaughton and Copenbarger, who are its members. By quitclaim deed, Cerullo conveyed title to the improvements on the Property to NHOM.

Also in January 2004, The Hazel I. Maag Trust (the Maag Trust) loaned $3 million to NHOM, which used the loan proceeds as partial payment to purchase the improvements on the Property and to acquire the Sublease. The loan was evidenced by a promissory note, which was secured by a first priority deed of trust on the improvements and the Sublease. At the same time, NHOM executed a promissory note in the amount of $1.15 million in favor of Plaza del Sol. The promissory note to Plaza del Sol (the Plaza del Sol Note) was made to pay for the balance of the purchase price of the improvements and acquisition of the Sublease. The Plaza del Sol Note was secured by a second priority deed of trust (the Plaza del Sol Deed of Trust) on the improvements and the Sublease. Roger Artz was the trustee of Plaza del Sol and a vice-president of Cerullo.

In April 2010, Cerullo, Plaza del Sol, and the Maag Trust entered into an agreement (the Assignment for Collection), under the terms of which the Maag Trust agreed to make certain payments on the Plaza del Sol Note, to reimburse Plaza del Sol for real property taxes it paid on the improvements and the Property, and to make future payments to Plaza del Sol in the amount equal to payments due on the Plaza del Sol Note as such payments became due. Cerullo and Plaza del Sol agreed not to declare a default

3

under the Sublease on account of then existing defaults so long as the Maag Trust made the agreed-upon payments.

D'Alessio was the president of VMG. The complaint alleged that sometime before April 22, 2011, D'Alessio approached Artz and proposed that he cause Cerullo and Plaza del Sol to breach the Ground Lease, the Sublease, and the Assignment for Collection, by declaring a default under the Sublease and terminating it. In the appellant's opening brief, Copenbarger asserts the purpose of D'Alessio's proposal was "to obtain the Property and the improvements for himself at no cost, free of the Maag Trust Deed, so they could be acquired by D'Alessio and/or an entity controlled by him." (Some capitalization omitted.) In response to D'Alessio's proposal, Cerullo and Plaza del Sol entered into a management agreement with VMG and authorized D'Alessio to serve NHOM with default notices.

On April 22, 2011, VMG, on behalf of Cerullo, served NHOM with a 30-day notice (the 30-day notice) to cure certain maintenance and other related defaults under the Ground Lease and the Sublease. The 30-day notice asserted that NHOM breached paragraph 1.2 of the Sublease by failing to maintain and repair both the improvements and the Property. The 30-day notice stated: "[W]e have conducted a limited inspection of the Property and have discerned there to be a wholesale failure on the part of [NHOM] to perform even a modicum of maintenance or repair to any aspect of the building or any part of it, to include major structural components." The 30-day notice included a list of maintenance and repair issues and demanded that NHOM address them within 30 days.

By letter dated May 18, 2011, Copenbarger, on behalf of NHOM, responded to the 30-day notice. He asserted, among other things, the sublessee's duty to maintain and repair under the Sublease did not extend to the improvements on the Property because the improvements were never subject to the Ground Lease and were conveyed by quitclaim deed to NHOM. By letter of the same date, Lloyd Copenbarger,

4

as trustee of the Maag Trust, informed Artz and Plaza del Sol that the Maag Trust had requested that a property management company determine what repairs and maintenance needed to be made at the Property and arrange for those repairs and maintenance to be made, at the Maag Trust's expense.

On May 26, 2011, VMG, on behalf of Cerullo, served a three-day notice to cure or quit (the three-day notice) on NHOM, based on "[y]our failure to cure the breaches of your Sub-Ground Lease . . . ." Five days later, Copenbarger, both in his individual capacity and derivatively on behalf of NHOM, filed this lawsuit. The complaint asserted three causes of action: (1) declaratory relief against Cerullo, Plaza del Sol, D'Alessio, and VMG; (2) breach of contract against Cerullo and Plaza del Sol; and (3) intentional interference with contract against Artz, D'Alessio, and VMG. In the declaratory relief cause of action, Copenbarger alleged a controversy exists among the parties "concerning their respective rights and duties arising under" the Ground Lease, the Sublease, the Plaza del Sol Deed of Trust, and the quitclaim deed. Copenbarger contended, among other things, NHOM had no duty to repair the improvements to the Property, the 30-day notice and the three-day notice were premature and did not comply with the Ground Lease, and NHOM is the owner of the improvements to the Property.

## UNLAWFUL DETAINER ACTION

In June 2011, Cerullo commenced an unlawful detainer action against NHOM predicated on the 30-day notice and the three-day notice. The unlawful detainer complaint alleged NHOM was in breach of the maintenance and repair covenant of the Sublease, alleged service of the 30-day notice and the three-day notice, and attached copies of those notices.

NHOM demurred to the unlawful detainer complaint, and, in response, Cerullo filed an amended unlawful detainer complaint. Instead of alleging breach of the maintenance and repair covenant, the amended unlawful detainer complaint alleged

5

nuisance, that is, "[t]he failures of NHOM to effect repairs to and/or maintenance on the [P]roperty have resulted in public and private nuisances and dangerous conditions, caused the [P]roperty to be in violation of building and zoning codes, and constitute waste . . . ." On August 1, 2011, VMG, on behalf of Cerullo, served a second 30-day notice on NHOM. The second 30-day notice was substantially the same as the first one, but asserted that NHOM's failure to make the identified repairs and maintain the improvements to the Property "has allowed the [P]roperty to become a public and private nuisance, constitutes waste, and constitutes violations of the building codes of the City of Newport Beach."

## THE ANTI-SLAPP MOTION

Respondents brought a special motion to strike Copenbarger's complaint under the anti-SLAPP statute. The motion asserted Copenbarger's lawsuit was a "meritless action filed in an attempt to intimidate the moving parties, to chill their rights to enforce contracts in which [Cerullo] is a party, and to bludgeon the moving parties into submission so that [Cerullo] would forego the commencement of an unlawful detainer action against [NHOM]." Copenbarger opposed the motion.

In October 2011, the trial court granted the special motion to strike. In the written order granting the motion, the court stated: "After consideration of the matter, the Court finds that all of the Defendants have sustained their burden to show Plaintiff's lawsuit arises from Defendants' exercise of free speech. The Landlord's service of the three day notice to quit was a communication preparatory to the bringing of the unlawful detainer action and thus constituted a protected activity within the anti SLAPP statute per *Feldman v. 1100 Park Lane*, 160 Cal App 4th 1467. [¶] The burden thus shifted to Plaintiff to establish a probability that Plaintiff will prevail on the claims asserted against Defendants. Plaintiff must demonstrate that the complaint is both legally sufficient and

6

supported by a sufficient prima facie showing of facts to sustain a favorable judgment. Plaintiff has failed to do either."

Respondents moved to recover nearly $31,100 in attorney fees and costs, and Copenbarger moved for reconsideration of the order granting the anti-SLAPP special motion to strike. The trial court denied the motion for reconsideration, and, though granting the motion for attorney fees, awarded Respondents only $6,557. Copenbarger timely appealed from the order granting the special motion to strike under the anti-SLAPP statute and from the order granting Respondents' motion for attorney fees.

## DISCUSSION

## I.

### The Anti-SLAPP Statute

"Section 425.16 provides for a special motion to strike '[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' (§ 425.16, subd. (b)(1).)" (*Cabrera v. Alam* (2011) 197 Cal.App.4th 1077, 1085.)

The trial court undertakes a two-step analysis in deciding the merits of an anti-SLAPP suit. First, the court must decide whether the defendant has made a threshold showing that the challenged cause of action arose from the defendant's protected activity. (*Taus v. Loftus* (2007) 40 Cal.4th 683, 712.) If the defendant fails to satisfy this burden, then the special motion to strike must be denied. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76.) If the trial court finds that such a showing has been made, then the court must decide whether the plaintiff has demonstrated a probability of prevailing on the challenged cause of action. (*Ibid.*) We independently review the trial court's order granting the special motion to strike under the de novo standard. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325-326.)

7

## II.

### The Complaint Was Not Based on Respondents' Protected Activity Within the Meaning of the Anti-SLAPP Statute.

The "critical consideration" under the first part of the anti-SLAPP analysis is "whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Id.* at p. 92.) "In deciding whether the 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.'" (*City of Cotati v. Cashman*, *supra*, 29 Cal.4th at p. 79.)

A. *The Complaint Was Not Based on Service of the Three-day Notice or the Unlawful Detainer Complaint.*

An unlawful detainer action is protected activity within the meaning of section 425.16. (*Clark v. Mazgani* (2009) 170 Cal.App.4th 1281, 1286 (*Clark*); *Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281 (*Birkner*).) It has been held that service of a three-day notice to quit also is protected activity within the meaning of section 425.16 because service of the notice is legally required to file an unlawful detainer action. (*Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1480 (*Feldman*); *Birkner*, *supra*, at pp. 281-282.)

Although an unlawful detainer action itself is protected activity under section 425.16, terminating a lease is not. (*Clark*, *supra*, 170 Cal.App.4th at pp. 1286-1287; *Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154, 158 (*Marlin*).) A complaint arising out of or based on the dispute or conduct underlying the unlawful detainer action is not subject to a special motion to strike. "'[T]he mere fact

8

that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.'" (*Marlin*, *supra*, at p. 160.) When, as in this case, the challenged lawsuit follows service of a three-day notice to quit, "[t]he pivotal distinction" is "whether an actual or contemplated unlawful detainer action by a landlord (unquestionably a protected petitioning activity) merely 'preceded' or 'triggered' the tenant's lawsuit, or whether it was instead the 'basis' or 'cause' of that suit." (*Clark*, *supra*, at p. 1289.)

*Clark* is instructive. In that case, a landlord evicted a tenant from a rent-controlled apartment, ostensibly to free the unit for occupancy by the landlord's daughter. (*Clark*, *supra*, 170 Cal.App.4th at p. 1284.) The tenant filed a complaint alleging the landlord fraudulently represented in the unlawful detainer action that the landlord intended for her daughter to move into the apartment, purposefully kept the apartment unoccupied, and performed renovations with the goal of reletting the unit to a new tenant for a higher monthly rent. (*Id.* at pp. 1284-1285.) The trial court granted the landlord's special motion to strike the complaint under the anti-SLAPP statute. (*Ibid.*)

Reversing, the Court of Appeal reasoned the complaint was not premised on the landlord's prosecution of the unlawful detainer action, but on the landlord's removal of the apartment from the rental market and fraudulent eviction of the tenant. (*Clark*, *supra*, 170 Cal.App.4th at p. 1286.) Although the unlawful detainer action triggered the tenant's lawsuit, that lawsuit was based on claims the landlord fraudulently invoked the family occupancy exemption of the rent control ordinance and failed to fulfill her obligations under that ordinance. (*Id.* at p. 1290.)

Three other cases guide our analysis. In *Marlin*, *supra*, 154 Cal.App.4th at page 157, the landlords filed notice under the Ellis Act (Gov. Code, § 7060 et seq.) of their intention to permanently remove apartment units from the rental market and, at the same time, served the tenants with notice to vacate their units. Two tenants brought a declaratory relief action against the landlords, seeking a declaration of rights under the

9

Ellis Act. (*Marlin*, *supra*, at p. 157.) The landlords responded with an anti-SLAPP motion that asserted the tenants' lawsuit arose out of the landlords' act of filing and serving the Ellis Act notices. (*Id.* at p. 158.) The trial court granted the anti-SLAPP motion, and the Court of Appeal reversed. (*Id.* at pp. 158, 163.) The Court of Appeal reasoned: "Defendants have fallen victim to the logical fallacy post hoc ergo propter hoc—because the notices preceded plaintiffs' complaint the notices must have caused plaintiffs' complaint. The filing and service of the notices may have triggered plaintiffs' complaint and the notices may be evidence in support of plaintiffs' complaint, but they were not the cause of plaintiffs' complaint. Clearly, the cause of plaintiffs' complaint was defendants' allegedly wrongful reliance on the Ellis Act as their authority for terminating plaintiffs' tenancy. Terminating a tenancy or removing a property from the rental market are not activities taken in furtherance of the constitutional rights of petition or free speech." (*Id.* at pp. 160-161, fns. omitted.)

Under similar reasoning, the court in *Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273 (*DFEH*) affirmed an order denying a landlord's anti-SLAPP motion to strike. The landlord had sought to permanently remove its apartment building from the rental market under the Ellis Act. (*DFEH*, *supra*, at pp. 1275-1276.) One tenant asserted she was disabled and requested an extension of time to find alternate housing, as required under state and local law for disabled tenants. (*Ibid.*) The tenant declined the landlord's request to provide detailed information on her disability and claimed that divulging such information would violate her right to privacy. (*Id.* at. pp. 1275, 1278.) The landlord ultimately removed the tenant through unlawful detainer. (*Id.* at p. 1275.) The Department of Fair Employment and Housing (the department) brought a lawsuit against the landlord for disability discrimination, and the landlord responded with an anti-SLAPP motion. (*Id.* at pp. 1275-1276.) Affirming the order denying the motion, the Court of Appeal reasoned the "gravamen" of the department's lawsuit against the landlord was for

disability discrimination, and was not "an attack on any act [the landlord] committed during the rental property removal process or during the eviction process itself." (*Id.* at p. 1284.) The complaint's allegations of wrongdoing were based on the landlord's alleged acts of failing to accommodate the tenant's disability; "[t]he letters, e-mail and filing of unlawful detainer actions constituted [the department]'s *evidence* of [the landlord]'s alleged disability discrimination." (*Id.* at pp. 1284-1285.)

In the recent case of *Oviedo v. Windsor Twelve Properties, LLC* (2012) 212 Cal.App.4th 97, the Court of Appeal reversed an order granting a landlord's anti-SLAPP motion to strike a tenant's cause of action for violation of a rent control ordinance. The landlord filed an unlawful detainer action against the tenant because she failed to pay an increased amount of rent. (*Id.* at p. 105.) After the landlord voluntarily dismissed the unlawful detainer action, the tenant filed a complaint against the landlord, which asserted, among other things, the rent increase violated the rent control ordinance. (*Id.* at p. 106.) The Court of Appeal concluded the cause of action for violation of the rent control ordinance was not based on the unlawful detainer action, a 60-day notice of intent to increase rent, or on a three-day notice to pay rent or quit, all of which are protected activities within the meaning of section 425.16. (*Oviedo*, *supra*, at pp. 110-111.) Rather, the cause of action for violation of the rent control ordinance arose out of the landlord's allegedly illegal act of raising the tenant's rent. (*Ibid.*)

In this case, service of the three-day notice preceded the complaint and might have triggered Copenbarger to file it, but the complaint was not based on service of that notice. The first cause of action, for declaratory relief, does not attack the service of the three-day notice or the unlawful detainer action itself: The gravamen of the declaratory relief cause of action is a dispute over the parties' respective rights and obligations under certain terms of the Ground Lease and the Sublease. The first cause of action sought a declaration on several issues arising under the Sublease, including whether NHOM owned the improvements to the Property and had a duty to maintain and

11

repair them. The 30-day notice constituted evidence these lease interpretation issues were genuinely in dispute. Cerullo's decision to amend the unlawful detainer complaint and the 30-day notice in order to assert nuisance, rather than breach of the covenant to maintain and repair, is evidence the declaratory relief cause of action was brought in good faith.

Respondents argue there is "nothing in the record to establish that the supposed controversy exists otherwise than as stated as a product of the prosecution of an unlawful detainer action proceeding by [Cerullo]." The 30-day notice and Copenbarger's May 18 letter in response constitute evidence demonstrating the existence of a conflict over the rights and obligations of the parties to the Sublease. The 30-day notice asserted NHOM breached its maintenance and repair obligations under the Sublease. The May 18 letter asserted NHOM's maintenance and repair obligations under the Sublease did not extend to the improvements on the Property because the improvements were never subject to the Ground Lease and were conveyed by quitclaim deed to NHOM.

Respondents did not meet their threshold burden of demonstrating the second cause of action, for breach of contract, arose out of protected activity. The second cause of action alleged Cerullo and Plaza del Sol breached the Sublease by failing to give a 60-day written notice to NHOM as required under the terms of the Ground Lease, which were incorporated into the Sublease. Although the second cause of action was triggered by Cerullo's commencement of unlawful detainer proceedings, that cause of action was based on Cerullo's alleged breach of the Sublease, not on the notices themselves.

Respondents also did not meet their threshold burden of demonstrating the third cause of action, for intentional interference with contract, arose out of protected activity. The third cause of action alleged Artz, D'Alessio, and VMG intentionally interfered with the Sublease by inducing Cerullo to seek to terminate it. The third cause of action was not brought against Cerullo, the party for which the 30-day notice and the

12

three-day notice were served. The acts giving rise to the third cause of action were not service of the three-day notice, but the alleged conduct of Artz, D'Alessio, and VMG in inducing Cerullo to serve the notice and attempt to terminate the Sublease.

## B. Feldman *and* Birkner *are Dissimilar.*

The trial court in this case cited *Feldman*, *supra*, 160 Cal.App.4th 1467, in the order granting the anti-SLAPP special motion to strike. In *Feldman*, the landlord filed an unlawful detainer action against the tenant and subtenants on the ground the subtenants were unapproved. (*Id.* at pp. 1473-1474.) The subtenants filed a cross-complaint for damages against the landlord, alleging retaliatory eviction, negligence, negligent misrepresentation, breach of the covenant of quiet enjoyment, and other causes of action. (*Id.* at p. 1475.) The landlord brought an anti-SLAPP motion to strike the cross-complaint. (*Id.* at pp. 1475-1476.) The trial court granted the motion only as to the retaliatory eviction cause of action. (*Id.* at p. 1473.)

The Court of Appeal concluded the anti-SLAPP special motion to strike should have been granted on all causes of action except that for negligent misrepresentation. (*Feldman*, *supra*, 160 Cal.App.4th at p. 1473.) The court reasoned that, with the exception of the negligent misrepresentation cause of action, the cross-complaint was based on the filing of the unlawful detainer action, service of the notice to quit, and statements made by the landlord's agent in connection with the eviction and unlawful detainer action. (*Id.* at p. 1483.) "These activities," the court stated, "are not merely cited as *evidence* of wrongdoing or activities 'triggering' the filing of an action that arises out of some other independent activity. These *are* the challenged activities and the bases for all causes of action, except possibly that of negligent misrepresentation." (*Ibid.*).

Respondents cite *Birkner*, *supra*, 156 Cal.App.4th at page 279, in which the landlord served the tenants with a 60-day notice to terminate tenancy under a rent control ordinance. The landlord sought possession to allow his mother to live in the building.

13

(*Ibid.*)  The tenants' counsel notified the landlord that the tenants could not be evicted because they were protected tenants under the ordinance.  (*Ibid.*)  When the landlord refused to rescind the termination notice, the tenants filed a complaint against him for wrongful eviction, negligence, breach of the covenant of quiet enjoyment, and intentional infliction of emotional distress.  (*Id.* at pp. 278-279.)  The trial court denied the landlord's anti-SLAPP motion on the ground the tenants' complaint was not based on protected activity within the meaning of section 425.16.  (*Birkner*, *supra*, at p. 280.)  The Court of Appeal reversed.  Although the court acknowledged that terminating a tenancy or removing a unit from the rental market is not activity taken in furtherance of the constitutional right of petition or free speech, the court concluded the sole basis for the tenants' lawsuit was the service of the termination notice and the landlord's refusal to rescind it, activities protected under the anti-SLAPP statute.  (*Id.* at pp. 281-283.)  The court distinguished *Marlin* on the basis the tenants' claims in that case were based on the landlords' conduct, which preceded service of the termination notice, of relying on the Ellis Act to evict the tenants.  (*Birkner*, *supra*, at pp. 282-283.)

This case is dissimilar to *Birkner* and *Feldman* because the causes of action alleged by Copenbarger did not arise out of service of the 30-day notice and the three-day notice.  Instead, the case is similar to *Clark*, *Marlin*, and *DFEH* because the declaratory relief cause of action is based Copenbarger's claim that NHOM had no obligation to maintain and repair the improvements to the Property—the ground on which Cerullo sought to terminate the Sublease.  The complaint and the evidence submitted in connection with the anti-SLAPP motion establish the 30-day notice and the three-day notice were, at most, evidence of an underlying dispute over interpretation of various lease terms, including whether NHOM owned the improvements to the Property and had a duty to maintain and repair them.  The breach of contract cause of action asserted an independent breach of a notice provision in the Ground Lease, and the interference cause of action is not asserted against the landlord, Cerullo.

14

### III.

### Probability of Prevailing on the
### Challenged Causes of Action

We do not consider whether Copenbarger demonstrated he is likely to succeed on the merits of the challenged causes of action because Respondents did not meet their threshold burden of showing the complaint was based on protected activity. The trial court erred in granting the anti-SLAPP motion; therefore, the trial court also erred in awarding Respondents attorney fees under section 425.16, subdivision (c). (*Clark, supra,* 170 Cal.App.4th at p. 1290, fn. 5.)

### DISPOSITION

The order granting the special motion to strike and the order awarding attorney fees are reversed. The matter is remanded for further proceedings. Appellant shall recover costs incurred on appeal.


FYBEL, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.

Filed 4/30/13

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| PAUL D. COPENBARGER, | |
| Plaintiff and Appellant, | G046273 |
| v. | (Super. Ct. No. 30-2011-00479442) |
| MORRIS CERULLO WORLD EVANGELISM et al., | ORDER GRANTING REQUEST FOR PUBLICATION |
| Defendants and Respondents. | |

Appellant has requested that our opinion, filed April 3, 2013, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED. The opinion is ordered published in the Official Reports.

FYBEL, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.