Filed 5/21/14  Phillips v. Sberlo CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| TANYA PHILLIPS,<br><br>     Cross-Complainant and Appellant,<br><br>v.<br><br>YOEL SBERLO et al.,<br><br>     Cross-Defendants and Respondents. | A138237<br><br>(San Francisco City & County<br>Super. Ct. No. CUD11639554) |

During the pendency of this unlawful detainer case, Tanya Phillips filed a cross-complaint against her former landlords, Yoel and Nadine Sberlo (as trustees of the Sberlo family trust), alleging numerous claims, including wrongful eviction.  The Sberlos, in turn, filed a special motion to strike under the "anti-SLAPP" statute (Code of Civil Proc. § 425.16),[1] asserting the cross-claims (a) arose from protected First Amendment petitioning activity, namely their service of eviction notices and prosecution of this unlawful detainer action and (b) lacked any arguable merit.  The trial court granted the motion and awarded the Sberlos attorney fees.  Following a now well-established line of anti-SLAPP cases in the unlawful detainer context, we reverse on the ground Phillips's cross-claims did not "arise from" the Sberlos' petitioning activities, but from other conduct preceding and following these activities.

---

[1] All further statutory references are to the Code of Civil Procedure unless indicated.

FACTUAL AND PROCEDURAL BACKGROUND

In October 2011, the Sberlos purchased an apartment building in which Phillips had been a tenant since at least 2000. Phillips paid $1,115 per month in rent, which was largely covered by San Francisco's Housing Authority (Housing Authority) under its Section 8 Housing Choice voucher program. The Authority paid $1,014 of the rent, Phillips paid $101.

The Sberlos apparently did not receive the rent due for November (Phillips does not contend otherwise) and eventually served Phillips with a three-day notice—to pay the full $1,115, not just her portion—under Code of Civil Procedure section 1161, subdivision (2). When that notice went unanswered, the Sberlos filed the instant action, alleging unlawful detainer. When the complaint went unanswered, the Sberlos obtained a default judgment and, then, a writ of execution for possession. The Sheriff's Department evicted Phillips and removed her possessions on January 4, 2012.

Later that month, Phillips retained counsel and moved to vacate the default judgment. In her moving papers, she asserted the Housing Authority mistakenly sent its November 2011 rent payment to the previous owner. When Phillips realized, in early November, that she was at risk of eviction, she contacted the previous owner. That person told Phillips she was busy and would call her back, but never did. After receiving an eviction notice around the second week of November, Phillips contacted the property management firm. It set up a meeting for her to sign a form allowing the Sberlos to obtain payments from the Housing Authority, and Phillips signed the form. When another eviction notice arrived later in the month, she called the management firm again and was told there had been an oversight and she could ignore the notice. Phillips also provided evidence the Housing Authority sent payments to the Sberlos in December 2011 and January 2012. Based on Phillips's submissions, the trial court vacated the default judgment on March 14, 2012.

Within a week, the Sberlos filed an amended complaint, and several months later, in November, they filed a second amended complaint. In addition to their cause of action for unlawful detainer, they brought causes of action for: breach of contract for Phillips's

portion of the rent for November and December 2011, which was still unpaid (and unrelated to any misdirected Housing Authority payment); trespass when Phillips returned to the apartment on January 5, 2012, and had to be forcibly removed by San Francisco police; breach of the covenant of good faith and fair dealing implied in her lease agreement when she delayed providing the consent the Sberlos needed to obtain payment from the Housing Authority; and declaratory relief that Phillips had no right of occupancy.

Phillips responded with a cross-complaint. She claimed the Sberlos knew about the misdirected rent and her status as a Section 8 tenant, but insisted on moving forward with the eviction, and "rented [what was Phillips's] apartment to a different tenant, discriminating against [Phillips] because of her race and social status in violation of State, Federal and local law." Phillips alleged negligence (for the manner in which they stored Phillips's possessions after the eviction, refusal to put her back in possession, failure to adequately accommodate her with another rental, and discrimination against her); violations of San Francisco's Residential Rent Stabilization and Arbitration Ordinance and Proposition M (for failure to properly credit rent and moving to evict on that basis, and for discrimination on the basis of race); breach of the warranty of quiet enjoyment (for interfering with her tenancy and not restoring Phillips to possession "pending the motions concerning possession, and after the motion to set aside the [unlawful detainer judgment] was granted"); negligent and intentional infliction of emotional distress; and discrimination on the basis of race under Civil Code section 51. The cross-complaint sought damages, but not declaratory or injunctive relief.

The Sberlos filed a special motion to strike Phillips's cross-complaint under section 425.16. They asserted all of Phillips's claims were in response to protected petitioning activity, namely their issuance of the three-day notice to quit and pursuit of the unlawful detainer action. They further asserted Phillips's claims were barred on the merits by California's litigation privilege. In a brief written order, dated January 3, 2013, the trial court agreed Phillips's cross-complaint arose entirely from protected petitioning activity and concluded she had not produced sufficient evidence supporting the merits of

3

her claims. However, the court deferred final ruling on the motion to allow additional discovery and briefing.

The parties then addressed additional issues as to the merits of Phillips's cross-claims. For instance, the Sberlos' asserted Phillips cross-claims necessarily failed in part because she still owed her $101 portion of the rent, regardless of what the Housing Authority had done.[2] Phillips, meanwhile, claimed the Sberlos had wrongfully terminated her tenancy because, as reflected in the three-day notice, they demanded from her not only the $101 she owed, but the full rent.

On February 4, 2013, the court issued a one-page order granting the special motion to strike. It subsequently denied reconsideration and, on March 18, 2013, awarded the Sberlos $21,973.50 in attorney fees as prevailing parties on the motion, reserving the issue of costs for later.

Phillips timely appealed.[3]

**DISCUSSION**

***The Anti-SLAPP Statute***

"The Legislature enacted the anti-SLAPP statute to address the societal ills caused by meritless lawsuits that are filed to chill the exercise of First Amendment rights. [Citation.] The statute accomplishes this end by providing a special procedure for striking meritless, chilling causes of action at the earliest possible stages of litigation." (*Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 443.)

" 'Under the statute, the court makes a two-step determination: "First, the court decides whether the defendant has made a threshold showing that the challenged cause of

---

[2] Phillips's deposition testimony suggests she asked the Housing Authority for permission to have no copayment obligation, but understood such an arrangement could not begin until she provided adequate supporting paperwork. She did not provide any paperwork, however, until January 2012, after her eviction. Nonetheless, Phillips asserts in her briefs on appeal that the Housing Authority paid 100 percent of her rent. If there is evidence supporting this, however, she has not cited it. We need not and do not resolve this factual "dispute" or determine the materiality of the dispute to Phillips's claims.

[3] "An order granting or denying a special motion to strike shall be appealable . . . ." (§ 425.16, subd. (i).)

action is one arising from protected activity. (§ 425.16, subd. (b)(1).) 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)' [citation]. If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim. (§ 425.16, subd. (b)(1) . . . .)" [Citations.] "Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." [Citation.]' " (*Tutor-Saliba Corp. v. Herrera* (2006) 136 Cal.App.4th 604, 609, italics omitted (*Tutor-Saliba*).)

An appellate court reviews de novo an order granting or denying an anti-SLAPP motion. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325–326 (*Flatley*); *Gerbosi v. Gaims, Weil, West & Epstein, LLP*, *supra*, 193 Cal.App.4th at p. 444; *Tutor-Saliba*, *supra*, 136 Cal.App.4th at p. 609.) This includes whether the challenged activity is "protected." (*Tutor-Saliba, supra*, at p. 609.) We also independently determine whether plaintiffs established a reasonable probability of success on their claims. (*Id.* at p. 610.) " 'We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]' [Citation.]" (*Flatley*, *supra*, 39 Cal.4th at p. 326.)

***"Arising From" Protected Activity***

The anti-SLAPP statute applies only to causes of action "arising from" protected activity—that is, activity "in furtherance of a person's right of petition or free speech under the United States or the California Constitution in connection with a public issue." (§ 425.16, subds. (b)(1), (e); *Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154, 160 (*Marlin*).) Such activity includes: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with

5

an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (*Id.*, subd. (e).)

The "arising from" requirement is not satisfied simply because there is some relationship between the cause of action and protected activity. "[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) Even if a cause of action is "triggered" by protected activity, that does not mean the lawsuit arises from it. (*Ibid.*) Rather, "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Ibid.*)

Over the last decade, the courts of appeal have addressed anti-SLAPP motions in unlawful detainer cases numerous times. These cases uniformly hold, or at least presume, that service of an eviction notice and/or pursuit of an unlawful detainer action *is* protected petitioning activity. (E.g., *Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281–282 (*Birkner*) [eviction notice, if legally required before instituting unlawful detainer action, and prosecution of unlawful detainer action is protected petitioning activity]; *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1483 (*Feldman*); *Copenbarger v. Morris Cerullo World Evangelism* (2013) 215 Cal.App.4th 1237, 1245 (*Copenbarger*).)[4] However, they also hold a landlord's conduct preceding, following, or

---

[4] While the Sberlos have cited *Birkner* and *Feldman*, holding required notices and unlawful detainer lawsuits are protected activity under subdivision (e)(1) or (e)(2) of the anti-SLAPP statute, they have not explicitly invoked these provisions. Rather, they argue their conduct falls under subdivision (e)(4), which broadly concerns "other conduct," but only if it is "in connection with a public issue or an issue of public interest." There is nothing of particular significance, however, about the instant unlawful detainer case. (See *USA Waste of California, Inc. v. City of Irwindale* (2010) 184 Cal.App.4th 53, 58,

6

otherwise distinct from the service of an eviction notice and/or prosecution of an unlawful detainer action, does *not* "arise from" that activity and a tenant's claims based on such conduct are not subject to a special motion to strike.

For example, in *Santa Monica Rent Control Bd. v. Pearl Street, LLC* (2003) 109 Cal.App.4th 1308, 1316–1319 (*Pearl Street*), the Court of Appeal held the lawsuit, brought by the rent control board, was based on the landlords' charging of unlawful rents, *not* on their filing of regulatory paperwork with the board. Even assuming submitting the regulatory paperwork qualified as protected petitioning activity, the court explained that was not the *basis* of the board's claims again the landlords. "[W]hile th[e] suit may have been 'triggered by' [the landlords'] submission of such documents to the Board, it is *not* true that this suit is *based on* the filing of such papers." (*Id.* at p. 1318.) Rather, it was based on the landlords' alleged violation of the rent control ordinance. "Not surprisingly, [the landlords] have not presented any authority for the proposition that their conduct in charging illegal rent is an act in furtherance of their rights of petition or free speech." (*Ibid.*)

*Marlin*, *supra*, 154 Cal.App.4th 154, and *Clark v. Mazgani* (2009) 170 Cal.App.4th 1281 (*Clark* ) employed the same reasoning. In *Marlin,* tenants sued for declaratory relief after being served with eviction notices under the Ellis Act. (*Marlin, supra,* 154 Cal.App.4th at p. 157; Gov. Code, § 7060.4(a).) The landlords responded with an anti-SLAPP motion, claiming the tenants' complaint arose from the filing and serving of the Ellis Act notices. (*Id.* at pp. 157–158.) The *Marlin* court explained: "The filing and service of the notices may have triggered plaintiffs' complaint and the notices may be evidence in support of plaintiffs' complaint, but they were not the cause of

65–66 [lease between city and company not a matter of public interest]; *Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1366 [no public interest in activity that does not go "beyond a particular interaction between the parties"]; see generally *Rivero v. American Federation of State, County and Municipal Employees, AFL–CIO* (2003) 105 Cal.App.4th 913, 924 [statements made in connection with a public issue or an issue of public interest are generally those that "concerned a person or entity in the public eye . . . , conduct that could directly affect a large number of people beyond the direct participants . . . or a topic of widespread public interest"].)

plaintiffs' complaint. Clearly, the cause of plaintiffs' complaint was defendants' allegedly wrongful reliance on the Ellis Act as their authority for terminating plaintiffs' tenancy. Terminating a tenancy or removing a property from the rental market are not activities taken in furtherance of the constitutional rights of petition or free speech." (*Id.* at pp. 161–162.)

In *Clark*, the landlord filed an unlawful detainer action to evict a tenant, "ostensibly to free the unit for occupancy by the landlord's daughter." (*Clark*, *supra*, 170 Cal.App.4th at p. 1284.) However, the daughter never moved in, and the evicted tenant subsequently sued for fraud, unlawful eviction, and failure to pay relocation expenses. (*Ibid.*) The appellate court once again explained the tenant's lawsuit "is not based on . . . filing or service of the notices of intent to evict, it is not based on anything [the landlord] said in court or a public proceeding, and it is not based on the fact that [the landlord] prosecuted an unlawful detainer action . . . . The complaint is based on [the landlord's] allegedly unlawful eviction, in that she fraudulently invoked the [rent ordinance] to evict [the tenant] from her rent-controlled apartment as a ruse to provide housing for her daughter, but never installed her daughter in the apartment as required by that ordinance, and also that she failed to pay [the tenant's] relocation fee." (*Id.* at p. 1288.)

Following *Pearl Street*, *Marlin*, and *Clark* , other appellate courts have similarly held anti-SLAPP motions were not properly advanced in the context of a landlord-tenant dispute. (See *Moriarty v. Laramar Management Corp.* (2014) 224 Cal.App.4th 125, 133 (*Moriarty*) [wrongful eviction claim premised on violation of San Francisco rent control ordinance did not arise from protected activity, though it followed the filing of unlawful detainer action]; *Copenbarger*, *supra*, 215 Cal.App.4th at p. 1240 ["while the three-day notice might have triggered the complaint, the evidence in the record demonstrates the complaint was based on an underlying dispute over . . . repair and maintenance obligations under the sublease and other unprotected activities"]; *Oviedo v. Windsor Twelve Properties, LLC* (2012) 212 Cal.App.4th 97, 110–111 ["appellant's first cause of action is based, not on the unlawful detainer action and prior communications, but on

8

respondent's alleged violation of the" Rent Stabilization Ordinance, thus "respondents 'were not sued for their conduct in exercising . . . constitutional rights' but for the underlying conduct of illegally raising appellant's rent"]; *Delois v. Barrett Block Partners* (2009) 177 Cal.App.4th 940, 953 (*Delois*) ["plaintiff's action here did not challenge any 'communications preparatory [to] or in anticipation of' a lawsuit" but "defendants' actions in allegedly breaching the Tenancy Termination Agreement" and "the landlords' failure to return plaintiff's rental deposit and other promised refunds"].)

The Sberlos' anti-SLAPP motion was improperly brought for the reasons discussed in the cases above. Phillips's cross-claims do not seek relief "arising from"— or as the courts have emphasized, *based* on—the Sberlos' service of eviction notices and prosecution of the instant unlawful detainer case. Rather, Phillips's cross-claims arise from the alleged mishandling of her personal property, termination of her tenancy and refusal to put her back into possession even after the unlawful detainer judgment was vacated, failure to credit rent (which allegedly began before eviction proceedings were started), and discrimination. She does not claim reliance on or damages flowing from the contents or receipt of the Sberlos' notices or from the prosecution of the unlawful detainer action, itself.

In fact, to the extent Phillips made any reference to the three-day notice in her opposition to the Sberlos' motion, it was only to rebut their argument on the merits that Phillips was properly evicted because she failed to pay even her portion of the monthly rent. In response, Phillips asserted the Sberlos' management company told her she could safely ignore the three-day notice. She further argued the notice evidenced the Sberlos' willful decision to terminate her tenancy—conduct *preceding* any notice and lawsuit—by demanding that she pay the full rental amount, in breach of the Sberlos' agreement with the Housing Authority. That an eviction notice and lawsuit may follow from a landlord's underlying conduct, such as a decision to terminate a tenancy in violation of rent laws or in breach of a lease agreement, does not transform that *underlying* conduct into protected activity when a tenant, such as Phillips, asserts claims based on that *underlying* conduct. (See *Marlin, supra,* 154 Cal.App.4th at pp. 161–162 ["notices may be evidence in

9

support of plaintiffs' complaint, but they were not the cause of plaintiffs' complaint" and "[t]erminating a tenancy [is] . . . not [an act] . . . in furtherance of the constitutional rights of petition or free speech"]; *Copenbarger*, *supra*, 215 Cal.App.4th at p. 1240 [suit does not arise from protected activity when "underlying dispute over . . . repair and maintenance obligations under the sublease"].)  Indeed, Phillips could have advanced her claims against the Sberlos had she had been dispossessed by means other than an eviction notice and unlawful detainer action.  In short, all of Phillips's cross-claims are based on allegedly wrongful conduct independent of the eviction notices and lawsuit, in and of themselves.

The few landlord-tenant cases that have concluded special motions to strike were appropriately brought—*Birkner*, *Feldman*, and *Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169 (*Wallace*)—are distinguishable.  In *Birkner* and *Feldman*, the eviction notices and unlawful detainer actions were not "not merely cited as evidence" of the landlord's allegedly wrongful conduct (*Feldman*, *supra*, 160 Cal.App.4th at p. 1483, italics omitted), but were the "sole basis for liability" (*Birkner*, *supra*, 156 Cal.App.4th at p. 283).  (See *Copenbarger*, *supra*, 215 Cal.App.4th at pp. 1248–1249 [distinguishing both cases].)  In *Birkner*, the landlord served an eviction notice and refused, at first, to rescind it.  The tenant was never evicted, and the notice was eventually rescinded. (*Birkner*, *supra*, 156 Cal.App.4th at pp. 278–280, 283.)  In *Feldman*, tenants refused to vacate after the landlord demanded higher rent.  (*Feldman*, *supra*, 160 Cal.App.4th at pp. 1473–1474.)  The landlord ultimately filed an unlawful detainer action, but dismissed it after the tenants vacated the premises.  (*Id.* at pp. 1473, 1475.)  Focusing closely on the allegations, *Feldman* determined the tenants' cross-complaint against the landlord, with the exception of a negligence claim, was "based entirely upon the alleged threats by [the landlord], the service of the notice to quit, and the filing of the unlawful detainer action itself."  (*Id.* at p. 1479.)  Notably, the same court that decided *Feldman*, distinguished it for this very reason in *Delois, supra,* 177 Cal.App.4th at page 955 and footnote 6.

*Wallace* is distinguishable on multiple grounds.  First, the anti-SLAPP motion in that case was directed at only two of the 13 causes of action the tenant advanced in his

10

complaint. This left unchallenged the remainder of the claims, including claims like those asserted by Phillips here, such as breach of the implied covenant of quiet enjoyment, infliction of emotional distress, housing discrimination, and trespass. (*Wallace*, *supra*, 196 Cal.App.4th at pp. 1178–1179.) There was no suggestion in *Wallace* that these claims, which necessarily bore at least some relation to the eviction notice and unlawful detainer action, arose from protected conduct. Second, again taking a close look at the allegations, the court explained the eviction notice and/or unlawful detainer action "did not merely precede or trigger the lawsuit." (*Id.* at p. 1194.) Rather, the allegations explicitly cited the "three-day notice to quit and [the] filing of the unlawful detainer action" as wrongdoing in and of themselves. (*Id.* at p. 1182.) The appellate court further concluded that, while not based solely on protected activity, the allegations made sufficient reference to such activity to make it more than "incidental" to the two claims at issue, thus bringing them within the ambit of the anti-SLAPP statute. (*Id.* at pp. 1178, 1182–1184.) Third, the special motion to strike in *Wallace* was not brought by the landlord, but by two other tenants accused of instigating the eviction, making *Wallace* a particularly peculiar scenario. (*Id.* at pp. 1212, 1214.) None of the unique features of *Wallace* are present in this case. (See also *Moriarty*, *supra*, 224 Cal.App.4th at p. 139 [distinguishing *Wallace* and also finding it "unpersuasive"].)

As we have discussed, this case falls squarely in the now well developed line of cases concluding wrongful eviction and other claims asserted against a landlord do not "arise from" protected petitioning activity. Accordingly, the Sberlos' special motion to strike fails the first prong of the anti-SLAPP analysis, and the trial court erred both in proceeding to the merits and in granting the motion.[5]

---

[5] Because we reverse on the first prong of the anti-SLAPP analysis, we do not consider whether Phillips demonstrated any probability of success on the merits of her claims. Nor do we express any opinion in that regard.

11

The order striking Phillips's cross-complaint, as well as the related fee award, are reversed.  Appellant to recover costs on appeal.

 

 

_____

Banke, J.

We concur:

_____

Dondero, Acting P. J.

_____

Becton, J.