Filed 5/21/21  Escamilla v. Encarnacion CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DANIEL ESCAMILLA, | |
| Plaintiff and Appellant, | G059276 |
| v. | (Super. Ct. No. 30-2019-01115500) |
| ENRIQUE ENCARNACION, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Nancy E. Zeltzer, Judge.  Affirmed.

Daniel Escamilla, in pro. per.

Stratman, Schwartz & Williams-Abrego and Daniel Kruid, for Defendant and Respondent.

\*        \*        \*

Appellant Daniel Escamilla rented two rooms from respondent Enrique Encarnacion.  In September 2019, Escamilla informed Encarnacion he had hired a young woman as a domestic assistant and she would be living in one of the rooms.  Encarnacion responded subletting was not permissible and a new resident would require amending the lease agreement.  Escamilla argued there was no sublet because the domestic assistant was not paying rent.  In October 2019, Encarnacion posted a three-day notice to cure at the rental residence.  The notice stated Escamilla was violating the lease agreement by permitting an unauthorized guest to use the premises without Encarnacion's written consent.

In December 2019, Escamilla filed a complaint against Encarnacion, alleging the service and content of the three-day notice constituted breaches of covenants of good faith and fair dealing, quiet enjoyment, were defamatory, and interfered with the contractual and economic relationship between Escamilla and the domestic assistant.  In response, Encarnacion filed a special motion to dismiss under Code of Civil Procedure section 425.16 (the anti-SLAPP statute).  The trial court granted the anti-SLAPP motion. It determined Escamilla's causes of action arose from protected speech, and that Escamilla failed to show his claims had minimal merit.  It awarded Encarnacion $4,890 in attorney fees and costs as the prevailing party.

Escamilla contends the trial court erred in granting the anti-SLAPP motion because the content of the three-day notice was not protected speech.  We disagree because the statements in the notice were communications made in preparation for legal proceedings.  We also conclude Escamilla has not shown his claims have minimal merit because the service and content of the three-day notice are absolutely privileged under the litigation privilege of Civil Code section 47.  The trial court properly granted the anti-SLAPP motion.  We also reject Escamilla's challenges to the fee award because it was supported by the declaration of Encarnacion's attorney.  Accordingly, we affirm the order granting the anti-SLAPP motion and awarding attorney fees and costs.

2

# I

## FACTUAL AND PROCEDURAL BACKGROUND

On December 2, 2019, Escamilla filed a complaint alleging causes of action for: (1) breach of the covenant of good faith and fair dealing, (2) breach of the covenant of quiet enjoyment, (3) slander per se, (4) trade libel, (5) intentional interference with contractual relations, and (6) intentional interference with prospective economic relations. The complaint alleged Encarnacion is Escamilla's landlord, and Escamilla occupies two of the four rooms in the rental residence. Under the terms of the lease agreement between Escamilla and Encarnacion, Escamilla's former live-in domestic assistant was a named guest who lived in one of the bedrooms. In September 2019, Encarnacion hired Denise Achim, a local college student, as his new domestic assistant in exchange for Achim's use of the second room. After Escamilla informed Encarnacion of the new living arrangement, Encarnacion responded: "Please keep in mind our leasing agreement does not allow for subletting. For other people to move in, we'd need to amend the contract after proper background checks and screening have taken place and approval is given." Escamilla replied that Achim was not subletting "since she is not paying rent," and provided Encarnacion with a copy of Achim's California driver's license. On October 13, 2019, "without warning," Encarnacion posted a three-day notice to cure on the rental residence. The notice stated Achim was an "unauthorized guest" and asserted Escamilla had no authority to allow Achim to use the spare bedroom. As a result of the notice, Escamilla alleges Achim moved out and abandoned her job with Escamilla.

In the first cause of action for breach of the covenant of good faith and fair dealing, Escamilla alleged Encarnacion's conduct interfered with his right to use the rental property. In the cause of action for breach of the covenant of quiet enjoyment, Escamilla alleged Encarnacion's "action in serving an improper and unfounded '3-Day Notice to Cure'" constituted a breach of the covenant. In the causes of action for slander per se and trade libel, Escamilla alleged the written statements made by Encarnacion, as

3

set forth in the three-day notice to cure," were defamatory. Finally, Escamilla alleged Encarnacion's conduct interfered with his contractual and economic relationship with Achim.

The complaint attached copies of the three-day notice to cure, the various lease agreements, and e-mail communications between Escamilla and Encarnacion. The three-day notice was addressed to Escamilla and other named tenants, and stated the tenants had violated section 5 of the lease agreement by allowing Achim, "an unauthorized guest on the premises for over 4 weeks." In section 5, the lease agreement provided that: (1) the premises were to be used and occupied by tenants and named guests exclusively as a single family dwelling; (2) the premises were not to be use for any business, profession, or trade of any kind; and (3) the tenants "shall not allow any other person, including Tenant's immediate family, relatives, and friends, who are guests of Tenant to use or occupy the Premises for a period of time longer than two weeks without first obtaining Landlord's written consent to such use." Achim was never listed as a named tenant or guest in the lease.

On May 26, 2020, Encarnacion filed a special motion to strike pursuant to the anti-SLAPP statute. In the anti-SLAPP motion, Encarnacion argued the causes of action in Escamilla's complaint arose from protected petitioning activity (the service and content of the three-day notice to cure), and that Escamilla could not meet his burden to show he would prevail on his claims because Encarnacion's acts were absolutely privileged under the civil litigation privilege of Civil Code section 47.

Encarnacion argued he would prevail on the anti-SLAPP motion, and requested $4,890 in attorney fees and costs, consisting of $60 for the filing fee, $30 for court reporter fee, and $4,800 in attorney fees for 12 hours of work, billed at $400 per hour. His attorney Daniel M. Kruid submitted a declaration stating he is a senior trial attorney and providing the relevant fees, billing rate and hours.

4

Escamilla opposed the anti-SLAPP motion. He argued his claims did not arise from protected activity. Rather, they arose from a dispute over the terms of the lease agreement. Escamilla also argued he would be able to prevail on the claims based on his testimony and the testimony of his office assistant Michelle Lobato, as set forth in the their declarations. He further argued the litigation privilege did not apply because Encarnacion's "threats" to Achim and "the false nature of the communication made under the guise of an anticipated legal proceeding" are not privileged.

In his declaration, Escamilla stated that in "early 2019, one of the roommates who was not a principal on the lease, moved out and I took over paying for the vacant room." In the summer of 2009, Escamilla screened and interviewed over 50 applicants "to find a person to exchange maid services and pet-walking services for use of the vacant room." He eventually hired Achim, who agreed to "handle laundry, light housework and dog care in exchange for use of the room primarily as storage for her personal belongings and staying overnight several days per week." Prior to allowing Achim to use the vacant room, "solely as a courtesy," Escamilla informed Encarnacion that Achim would be a "new roommate." Encarnacion responded that the lease did not allow subletting, and later, "without warning and for no apparent cause," Encarnacion delivered to Achim a three-day notice to cure, alleging that her staying in the vacant room was a direct violation of the Lease Agreement. After receiving the notice, Achim's attitude toward Escamilla "changed considerably. She stopped making eye contact with me and I would not see her at the house." Achim later quit working for Escamilla.

In her declaration, Lobato stated she supervised Achim. In October 2019, Achim told Lobato she had received a three-day notice to cure under her bedroom door. "Based on the content of the notice, she expressed fear and concern that she was occupying the room illegally and that she would get in trouble for occupying the room." Lobato also stated she noticed Achim's attitude toward Escamilla worsened immediately after Achim received the notice.

5

The trial court granted the anti-SLAPP motion. It found the claims arose from the content of the 30-day notice, which is protected speech. The court also found Escamilla failed to show his claims had minimal merit. Finally, the court awarded Encarnacion attorney fees and costs in the amount of $4,890.

II

DISCUSSION

"A SLAPP suit – strategic lawsuit against public participation – seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. [Citation.] The Legislature enacted Code of Civil Procedure section 425.16 – known as the anti-SLAPP statute – to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights. [Citation.]" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055-1056 (*Rusheen*).) To determine whether a cause of action should be stricken under the anti-SLAPP statute, Code of Civil Procedure section 425.16 establishes a two-part test. Under the first part, the party bringing the motion has the initial burden of showing that the cause of action arises from an act in furtherance of the right of free speech or petition – i.e., that it arises from a protected activity. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965.) Once the moving party has met its burden, the burden shifts to the other party to demonstrate a probability of prevailing on the cause of action. (*Ibid*.) Only a cause of action that satisfies both parts of the anti-SLAPP statute – i.e., that arises from protected speech or petitioning and lacks even minimal merit – is a SLAPP, subject to being stricken under the statute. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) An appellate court independently reviews the trial court's order granting an anti-SLAPP motion. (*Rusheen*, *supra*, at p. 1055.)

Here, the complaint alleged Encarnacion posted or served a three-day notice to cure. The breach of covenant of good faith and fair dealing claim asserted Encarnacion's acts constituted a breach. The breach of the covenant of quiet enjoyment

6

claim specifically alleged the service of notice breached that covenant. The defamation claims alleged the statements in the notice were defamatory. Finally, the tortious interference claims allege the service and content of the notice caused Achim to quit working for Encarnacion. As Escamilla acknowledges, Encarnacion's service of the three-day notice is protected activity. (See *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1480 (*Feldman*) [service of a three-day notice to quit, filing of an unlawful detainer action, and threats by the landlord's agent in connection with the dispute constituted protected activity under section 425.16, subd. (e)].) The statements made in the notice also are protected acts because they are "communication[s] preparatory to the bringing of the unlawful detainer action." (*Feldman, supra,* at p. 1480; see also *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1259 [letter by employer's attorney to the employer's customers accusing the employee of breach of contract and misappropriation of trade secrets, and suggesting customers should not do business with the former employee to avoid potential involvement in any ensuing litigation is protected speech].) Accordingly, Escamilla's causes of action all arise from protected activity.

Escamilla contends the three-day notice contained defamatory statements that were not protected speech. He argues the notice contains language addressing Achim by name and threatening her with litigation. We have reviewed the notice and, as stated above in our factual summary, conclude the notice is not addressed to Achim and warns only the named tenants about unauthorized guests. Escamilla further argues the characterization of Achim as an unauthorized guest is "false" and not necessary to initiate unlawful detainer action. We disagreed. The notice identifies the alleged lease violation to permit the tenants an opportunity to cure and is logically related to and in preparation for an unlawful detainer action in the event the tenants do not cure the violation. Thus, the challenged statements are protected activity.

Escamilla also contends the claims do not arise from protected activity, but from a dispute over the terms of the lease agreements. A dispute over the terms of a lease

7

agreement is not protected activity. (*Copenbarger v. Morris Cerullo World Evangelism* (2013) 215 Cal.App.4th 1237, 1247-1248.) As stated above, the only challenged acts in the complaint are the service of the notice and the statements made in the notice, which are protected activities. The complaint specifically alleged that the service and content of the notice breached the covenants of good faith and fair dealing and quiet enjoyment, defamed Escamilla, and disrupted his economic and contractual relations with Achim. Even if Escamilla's claims also are based on nonprotected activity, the protected activities are not merely incidental and instead form the basis for liability on the claims. (See *Baral v. Schnitt* (2016) 1 Cal.5th 376, 394 [protected activity is incidental if it "merely provide[s] context, without supporting a claim for recovery"].) Thus, Encarnacion has met his burden to show Escamilla's claims are subject to the anti-SLAPP statute. (See *id.* at p. 396 ["At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage."].)

Because Encarnacion met his burden of showing the claims arose from protected activity, the burden shifted to Escamilla to demonstrate a probability of prevailing on the merits. (*Zamos v. Stroud*, *supra*, 32 Cal.4th at p. 965.) Escamilla cannot do so, as Encarnacion's acts are absolutely privileged under the litigation privilege, Civil Code section 47. (See *Flatley v. Mauro* (2006) 39 Cal.4th 299, 323 [the litigation privilege is "relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing"].)

The litigation privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]" (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.)

8

"Although originally enacted with reference to defamation actions alone [citation], the privilege has been extended to *any* communication, whether or not it is a publication, and to *all* torts other than malicious prosecution." (*Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 29 (*Edwards*).) The privilege is "absolute in nature, applying 'to all publications, irrespective of their maliciousness.'" (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.) "Any doubt as to whether the privilege applies is resolved in favor of applying it. [Citations.]" (*Adams v. Superior Court* (1992) 2 Cal.App.4th 521, 529.)

Here, the service of the three-day notice is privileged. (See *Feldman*, *supra*, 160 Cal.App.4th at p. 1488 ["litigation privilege applied to the service of the notice to quit"].) The statements in the notice asserting Escamilla was violating the lease agreement by permitting Achim to use the rental premises as an unauthorized guest also are privileged. (See *Edwards*, *supra*, 53 Cal.App.4th at p. 30 [the litigation privilege applies communications made in course of a judicial proceeding, even "false and fraudulent statements"].) Thus, Escamilla cannot prevail on his claims against Encarnacion based on those acts. (See, e.g., *Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1132 ["litigation privilege extends beyond claims of defamation . . . to the torts alleged here: interference with contract and prospective economic advantage"]; *Feldman*, *supra*, 160 Cal.App.4th at pp. 1498 [litigation privilege applies to bar causes of action for breach of contract and breach of the covenant of quiet enjoyment].) The trial court properly granted Encarnacion's anti-SLAPP motion.

Finally, Escamilla challenges the trial court's award of attorney fees and costs. He argues the $4,890 amount was not fully documented, and the billing rate of $400 per hour is not reasonable for "an insurance defense attorney who was first admitted on December 1, 2015." We review an award of attorney fees for prevailing on an anti-SLAPP motion for abuse of discretion. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140.) We conclude the amount awarded was supported by attorney Daniel Kruid's

9

declaration detailing the fees, billing rate and hours.  As for the hourly billing rate, Escamilla has not provided any evidence showing the rate was unreasonable.  We note that in asserting Encarnacion's attorney is an insurance defense attorney who was admitted to the bar in 2015, Escamilla provided the State Bar information for a different attorney, Steven R. Kruid, rather than Encarnacion's attorney, Daniel Kruid. Thus, Escamilla has not shown the trial court abused its discretion in awarding $4,890 in attorney fees and costs.

## III

### DISPOSITION

The order granting Encarnacion's anti-SLAPP motion and awarding attorney fees and costs is affirmed.  Encarnacion is entitled to his costs on appeal.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


THOMPSON, J.


10