Filed 3/21/24  Ultimate Action v. Pacific City Bank CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ULTIMATE ACTION, LLC, | B323803 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. 21STCV26756) |
| PACIFIC CITY BANK, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Gregory Keosian, Judge.  Order affirmed; motion for sanctions denied.

Wolf, Rifkin, Shapiro, Schulman & Rabkin, Eric Levinrad and Johnny White for Plaintiff and Appellant.

Meylan Davitt Jain Arevian & Kim, Vincent J. Davitt and Anita Jain for Defendant and Respondent.

## INTRODUCTION

Here we hold that a cross-complaint filed in response to the plaintiff's complaint attacking the validity of a loan agreement does not fall within the provisions of a strategic lawsuit against public participation (SLAPP). (Code Civ. Proc., § 425.16.)[1]

The majority shareholder in a company filed an individual and derivative action attacking the validity of a loan agreement between the company and a bank. The bank responded by filing a cross-complaint against the majority shareholder and the company, seeking a judicial determination of the validity of the agreement, or, alternatively, an equitable lien against the company's real property. The shareholder filed a special motion to strike under our anti-SLAPP statute, arguing the bank's causes of action all arose from the shareholder's protected activity of filing the derivative action. The shareholder now appeals the trial court's denial of its motion to strike the bank's cross-complaint. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Ultimate Action's Pleadings*

Plaintiff and appellant Ultimate Action, LLC (Ultimate Action) owns a 60 percent interest in 357 South Broadway, LLC (the Company). On July 21, 2021, Ultimate Action filed this action, individually and derivatively, on behalf of the Company, naming respondent Pacific City Bank (the Bank) as a defendant. Ultimate Action subsequently filed its operative first amended complaint. In the first cause of action, Ultimate Action seeks to rescind a 2017 loan agreement between the Company and the Bank. Ultimate Action

---

[1]    All further statutory references are to the Code of Civil Procedure unless otherwise stated

2

alleges the Company's minority shareholder orchestrated the loan agreement without first obtaining the necessary shareholder approval to bind the Company to the loan agreement. The complaint also asserts causes of action for cancellation, avoidance of fraudulent transfer, and declaratory relief, all stemming from the 2017 loan agreement. In its cause of action for declaratory relief, Ultimate Action alleges, "A controversy has arisen between Plaintiff and the Company, on the one hand, and Pacific City Bank, on the other hand, as to whether a valid contract exists between Pacific City Bank and the Company, and as to whether Pacific City Bank has a valid security interest against the Company's real estate."[2]

B.    *Pacific City Bank's Cross-Complaint*

On March 30, 2022, the Bank filed a cross-complaint against Ultimate Action and the Company. The cross-complaint alleges the Bank extended a loan to the Company secured by a deed of trust encumbering real property owned by the Company. The Bank claims the Company used the loan to pay off then-existing liens on the real property owned by the Company. The cross-complaint states that in July 2021, the Bank "learned of Ultimate Action's challenge to the validity and enforceability" of the loan and deed of trust.

The cross-complaint alleges three causes of action: (1) quiet title, (2) declaratory relief, and (3) equitable lien by subrogation. In its cause of action to quiet title, the Bank alleges that Ultimate Action, "purporting to act derivatively in the Company's shoes," challenges the validity and enforceability of the loan and deed of trust. The Bank seeks "to establish its

---

[2]    The complaint also asserts additional causes of action against other parties which are not germane to Ultimate Action's appeal.

3

first position lien interest against the adverse claims of Cross-Defendants as of July 27, 2017."

In its cause of action for declaratory relief, the Bank states, "An actual controversy has arisen and exists between the Bank and Cross-Defendants, and each of them, with respect to the rights, obligations and duties of the parties." The Bank contends its deed of trust is valid and enforceable, and Ultimate Action and the Company both dispute the validity and enforceability of the deed of trust.

The Bank's cause of action for equitable lien by subrogation is pled in the alternative to the other causes of action. The Bank states that in the event its deed of trust is found to be invalid or unenforceable, it seeks an equitable lien against the Company's real property "to secure payment to the Bank of any and all amounts paid with the Bank's loan proceeds which were used to satisfy the Company's preexisting debt."

In its prayer for relief, the Bank seeks: (1) a quiet title order stating the Bank's deed of trust is a first position lien; (2) a judicial declaration that its deed of trust is valid and enforceable; or, alternatively, (3) an order that the Bank is entitled to an equitable lien encumbering the property. The Bank also seeks to recover its costs of suit, attorneys' fees, and pre- and post-judgment interest.

C.    *Ultimate Action's Anti-SLAPP Motion*

On June 1, 2022, Ultimate Action filed an anti-SLAPP motion to strike the Bank's cross-complaint under section 425.16. Ultimate Action sought to strike the Bank's cross-complaint in its entirety as against Ultimate Action. Ultimate Action argued all of the Bank's causes of action arose from Ultimate Action's decision to file the instant action challenging the validity of the

4

Bank's loan agreement with the Company. Ultimate Action claimed its filing of the lawsuit is protected activity under section 425.16, subdivision (e). Ultimate Action further argued the Bank could not establish a reasonable probability of prevailing on the merits because Ultimate Action did not have any direct ownership interest in the Company's real property and thus was "not a direct participant in the controversy described by the cross-complaint."

The Bank opposed Ultimate Action's motion, arguing that its causes of action did not arise from any protected activity undertaken by Ultimate Action. The Bank also argued it could establish a probability of success on the merits of its claims.

On August 11, 2022, the trial court issued its ruling denying Ultimate Action's motion. The trial court found Ultimate Action failed to carry its burden of establishing that the Bank's causes of action arose from protected activity under section 425.16. The trial court noted that to determine whether a cause of action "arises from" protected activity, a court must disregard the labeling of the claim and instead examine the principal thrust or gravamen of the cause of action to determine if protected activity provides the foundation for the claim.

Relying on *City of Cotati v. Cashman* (2002) 29 Cal.4th 69 (*Cotati*) and *Copenbarger v. Morris Cerullo World Evangelism* (2013) 215 Cal.App.4th 1237, the trial court distinguished between claims that "arise from" protected activity and those that are merely "triggered by" protected activity. The court determined "an anti-SLAPP motion will not lie merely for a lawsuit triggered by protected activity, where the activity itself is only evidence of the existence of an underlying controversy." Turning to the allegations of the Bank's cross-complaint, the trial court noted the cross-complaint made "incidental mention" of Ultimate Action's derivative claims. The court

5

nonetheless held that "While [Ultimate Action] has challenged the validity of that interest in its complaint, [the Bank]'s claims are not based on any alleged impropriety in [Ultimate Action]'s lawsuit, but merely seeks an affirmative adjudication of that interest's validity, much as was the case with the municipal ordinance in *City of Cotati*." The trial court found Ultimate Action failed to carry its burden to demonstrate the Bank's claims arose from protected activity and denied the motion without reaching the question of whether the Bank established a probability of success on the merits.

D. *Appeal*

Ultimate Action timely appealed the denial of its motion. On appeal, Ultimate Action contends the trial court erred in finding the Bank's causes of action did not arise from protected activity.

**DISCUSSION**

A. *Anti-SLAPP Procedure*

The "anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884 (*Wilson*).) A "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) The anti-SLAPP statute itself provides that its protections "shall be construed broadly." (§ 425.16, subd. (a).)

6

In evaluating an anti-SLAPP motion to strike, courts conduct a two-step analysis. First, the court decides whether a defendant has met its "burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).) Second, if a defendant meets its burden on the threshold showing, the court decides if the plaintiff "has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

We review the trial court's order denying the anti-SLAPP motion de novo, applying the same two-step analysis. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.) We independently review whether a moving party has made a threshold showing that the challenged cause of action arises from protected activity. (*Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 988.)

B.    *Prong One*

"At the first step of the analysis, the defendant must make two related showings. Comparing its statements and conduct against the statute, it must demonstrate activity qualifying for protection. (See § 425.16, subd. (e).) And comparing that protected activity against the complaint, it must also demonstrate that the activity supplies one or more elements of a plaintiff's claims." (*Wilson, supra,* 7 Cal.5th at p. 887.) "At this stage, the question is only whether a defendant has made out a prima facie case that activity underlying a plaintiff's claims is statutorily protected." (*Id.* at p. 888.)

7

1. *The Gravamen Test*

Ultimate Action argues the trial court erred in applying the "gravamen test" to determine whether the Bank's causes of action arise from protected activity. Ultimate Action contends the California Supreme Court's opinions in *Baral v. Schnitt* (2016) 1 Cal.5th 376 (*Baral*) and *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995 (*Bonni*) rendered the gravamen test obsolete and improper. We disagree.

In *Baral*, our Supreme Court resolved a conflict among California Courts of Appeal regarding the application of anti-SLAPP motions targeting "mixed" causes of action that included allegations of protected and non-protected activities. (*Baral, supra*, 1 Cal.5th at pp. 381–382, 384–396.) The *Baral* court did not address the "principal thrust" or "gravamen" analysis and instead considered whether a "cause of action" in the anti-SLAPP context should be defined in terms of the primary right theory. (*Id.* at p. 394.) The court rejected this argument, finding "the primary right theory is notoriously uncertain in application. . . . The theory is ill-suited to the anti-SLAPP context, where the Legislature authorized a special motion to strike only claims that arise from protected speech or petitioning activity." (*Id.* at p. 395.) Instead, the *Baral* court determined the Legislature "had in mind *allegations of protected activity that are asserted as grounds for relief*. The targeted claim must amount to a 'cause of action' in the sense that it is alleged to justify a remedy." (*Ibid.*) The court thus concluded that an anti-SLAPP motion, like a conventional motion to strike, may be used to attack particular alleged acts giving rise to a claim for relief within a cause of action. (*Id.* at p. 393.)

In *Bonni,* the defendant moved to strike the plaintiff's "retaliation cause of action in its entirety." (*Bonni, supra*, 11 Cal.5th at p. 1009.) The

8

plaintiff argued that because the defendant's motion was "aimed at the entire cause of action," the court did not have to employ the *Baral* approach and could instead simply determine "whether the gravamen of the entire cause of action was based on protected or unprotected activity." (*Id*. at p. 1011.) The *Bonni* court rejected this argument, noting the cause of action for retaliation included "a nonexhaustive list of at least 19 distinct acts or courses of conduct allegedly undertaken in retaliation." (*Id*. at p. 1009.) The plaintiff's retaliation claim was thus a "mixed cause of action" which was governed by *Baral*. (*Id*. at pp. 1010–1011.)

In *Bonni*, our California Supreme Court rejected the same interpretation of *Baral* put forth by Ultimate Action here. The *Bonni* court expressly acknowledged the so-called "gravamen test" remained proper in certain contexts even after *Baral*. "To be clear, we do not suggest that every court that has continued to label its approach a gravamen test even after *Baral* has erred. Some courts have invoked the term not in the way Bonni suggests—to determine the essence or gist of a so-called mixed cause of action—but instead to determine whether particular acts alleged within the cause of action supply the elements of a claim [citation] or instead are incidental background [citations]. This approach is consistent with *Baral*." (*Id*. at p. 1012.) Here, the trial court used a gravamen test to determine that any reference to Ultimate Action's derivative action in the Bank's cross-complaint was merely "incidental" and did not supply the elements of the Bank's claims.

In its reply brief on appeal, Ultimate Action states, without analysis or support, that all of the Bank's causes of action are mixed causes of action subject to *Baral*. This assertion was not raised below and was raised by Ultimate Action for the first time in its reply on appeal. (*In re Marriage of*

9

*Nassimi* (2016) 3 Cal.App.5th 667, 695 [""theories not raised in the trial court cannot be asserted for the first time on appeal""]; *Bocanegra v. Jakubowski* (2015) 241 Cal.App.4th 848, 857 [""a party is not permitted to change its position on appeal and raise new issues not presented in the trial court""]; *American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453 ["Points raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument"].)

Even if this argument were properly before us, it is contradicted by Ultimate Action's arguments below and its opening brief on appeal. Ultimate Action has repeatedly argued that its filing of the instant action was the sole basis for the Bank's claims against it. For example, in its motion below, Ultimate Action expressly claimed that "The claims pled by [the Bank] arise exclusively from [Ultimate Action]'s protected act of filing litigation on behalf of the Company, thereby satisfying the first prong of the anti-SLAPP statute." In its opening brief on appeal, Ultimate Action claims it was named as a party to the Bank's cross-complaint "solely because [it] filed a derivative suit" on behalf of the Company. Ultimate Action also argues that it "finds itself the target of a lawsuit for the sole reason that it sued respondent, which makes the case a quintessential SLAPP suit."

Ultimate Action does not point to any non-protected activity that forms the basis of the Bank's causes of action. The Bank's causes of action against Ultimate Action are not mixed causes of action subject to the analysis outlined in *Baral* or *Bonni*. The trial court thus did not err in looking to the gravamen of the Bank's claims to determine whether Ultimate Action's filing of this action supplied the elements of any of the Bank's claims.

10

## 2. *Arising from Protected Activity*

"A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park, supra,* 2 Cal.5th at p. 1062.) "The defendant's first-step burden is to identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute. A 'claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.'" (*Wilson, supra,* 7 Cal.5th at p. 884; accord, *Park*, at p. 1060.) "'[T]he mere fact that an action [or claim] was filed after protected activity took place does not mean the action [or claim] arose from that activity for the purposes of the anti-SLAPP statute.'" (*Park*, at p. 1063; see *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 621 ["a claim does not 'arise from' protected activity simply because it was filed after, or because of, protected activity, or when protected activity merely provides evidentiary support or context for the claim"].) "To determine whether a claim arises from protected activity, courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.'" (*Wilson*, at p. 884; accord, *Park*, at p. 1063.)

"As courts applying the anti-SLAPP statute have recognized, the 'arising from' requirement is not always easily met. [Citations.] The only means specified in section 425.16 by which a moving defendant can satisfy the requirement is to demonstrate that the defendant's conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e)." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 66.) As defined by statute, these four categories of protected activity are: "(1) any written or oral statement or writing made

11

before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(1)–(4).)

To carry its burden on the first prong, Ultimate Action alleges the Bank's claims against it all arise from protected activity in the form of Ultimate Action's filing of the instant lawsuit. We agree with the trial court that *Cotati* is instructive here. In that case, a city adopted a mobilehome park rent stabilization ordinance. (*Cotati*, *supra*, 29 Cal.4th at p. 72.) Owners of mobilehome parks sued the city in federal court, claiming the ordinance was invalid and unconstitutional. (*Ibid*.) The city then sued the owners in state court, asserting a cause of action for declaratory relief based on the dispute between the city and the owners over the validity and constitutionality of the ordinance. (*Ibid*.) The owners filed an anti-SLAPP motion to strike the city's state court complaint, arguing it arose from their filing of the federal action. (*Id*. at pp. 72–73.) The trial court granted the motion, finding the city's state court action arose from the owners' filing of the federal lawsuit. (*Id*. at p. 73.)

The Court of Appeal reversed the trial court, and the California Supreme Court affirmed the decision of the Court of Appeal. Our Supreme Court noted, "the mere fact an action was filed after protected activity took

12

place does not mean it arose from that activity." (*Cotati*, *supra*, 29 Cal.4th at pp. 76–77.) "The anti-SLAPP statute cannot be read to mean that 'any claim asserted in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under section 425.16, whether or not the claim is *based on* conduct in exercise of those rights.' [Citations.]" (*Id*. at p. 77.) Instead, "the statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." (*Id*. at p. 78.)

Turning to the facts before it, our Supreme Court noted it was undisputed that the owners' federal litigation "informed City of the existence of an actual controversy justifying declaratory relief." (*Cotati*, *supra*, 29 Cal.4th at p. 79.) Nonetheless, the Court held that the city's state court action did not arise from the federal litigation. "In this case, as the Court of Appeal stated, a dispute exists between the parties over the constitutionality of Cotati Ordinance No. 680. And just as Owners' lawsuit itself was not the actual controversy underlying Owners' request for declaratory relief in federal court, neither was that lawsuit the actual controversy underlying City's state court request for declaratory relief. Rather, the actual controversy giving rise to both actions—the fundamental basis of each request for declaratory relief—was the same underlying controversy respecting City's ordinance. City's cause of action therefore was not one arising from Owners' federal suit. Accordingly, City's action was not subject to a special motion to strike." (*Id*. at p. 80, fn. omitted.)

We are presented with similar facts here. Ultimate Action filed an individual and derivative complaint seeking declaratory relief in the form of a judicial declaration that the loan agreement between the Bank and the

13

Company is invalid. Ultimate Action's own pleading alleges a "controversy has arisen between [Ultimate Action] and the Company, on the one hand, and [the Bank], on the other hand, as to whether a valid contract exists between [the Bank] and the Company." In the same way that the owners in *Cotati* raised their dispute regarding the constitutionality of the ordinance in a federal action, Ultimate Action raised a dispute regarding the enforceability of the loan agreement by filing this action. The Bank responded by filing a cross-complaint aimed at this same dispute between Ultimate Action, the Company, and the Bank regarding the validity of the loan. As in *Cotati*, it is the underlying dispute itself that gives rise to the Bank's claims, not the filing of this lawsuit.

Ultimate Action's attempts to distinguish *Cotati* are unpersuasive. Ultimate Action inaccurately claims that *Cotati* applies "the inherently subjective 'gravamen' test that *Baral* and *Bonni* discredited." The court in *Cotati* did not itself apply a gravamen test but rather merely stated that the trial and appellate courts both recognized the subject matter of the city's suit was identical to that of the owners' suit. "City has consistently taken the position that the actual controversy with respect to which it seeks declaratory relief is the same as the controversy with respect to which Owners earlier sought declaratory relief in federal court . . . . And while the courts below have drawn different conclusions from the fact, both have recognized that the gravamen of City's state court action is the same as that of Owners' federal court action." (*Cotati*, *supra*, 29 Cal.4th at p. 79.) We also note *Cotati* did not involve a mixed cause of action; rather, it concerned a cause of action for declaratory relief that was alleged to arise solely from protected activity. As set forth above, *Bonni* expressly recognized that courts may properly examine the "gravamen" of a non-mixed cause of action in determining whether

14

protected activity supplies the elements of a claim or is merely incidental to it. (*Bonni*, *supra*, 11 Cal.5th at p. 1012.) In short, the holdings of *Baral* and *Bonni* did not discredit, disapprove, or otherwise invalidate the holding or reasoning of *Cotati*.

Ultimate Action also argues *Cotati* is inapplicable because, in that case, the owners' federal lawsuit only informed the city of the existence of a controversy justifying declaratory relief and did not itself constitute that controversy. The same is true here. The Bank's cross-complaint states that it first learned of the existence of this dispute in July 2021, which is when Ultimate Action filed this suit. The cross-complaint seeks to adjudicate the same underlying dispute regarding the validity of the loan and not the act of filing this lawsuit. As in *Cotati*, Ultimate Action's filing of this action is merely evidence of the existence of the dispute between the parties.

Other courts have applied the reasoning of *Cotati* to analogous facts and reached the same result. For example, in *Gotterba v. Travolta* (2014) 228 Cal.App.4th 35 (*Gotterba*) a dispute arose between an employer and a former employee over a termination agreement which included a confidentiality provision. (*Id*. at pp. 38–39.) When the plaintiff began making statements to the press, the defendant's counsel sent the plaintiff a letter alleging the statements breached the termination agreement and threatening legal action. (*Id*. at p. 38.) The plaintiff filed an action for declaratory relief seeking a judicial determination of his rights and duties under the agreement because the defendant threatened to take legal action against him based upon alleged violations of the agreement. (*Id*. at p. 39.) The defendant filed an anti-SLAPP motion to strike, arguing the plaintiff's action arose from the defendant's protected activity of sending a prelitigation demand letter. (*Id*.

15

at pp. 39–40.)  The trial court denied the motion and the Court of Appeal affirmed.  (*Id*. at p. 40.)

The Court of Appeal determined "that a communication preparatory to or in anticipation of litigation" was protected activity under section 425.16, subdivision (e)(2).  (*Gotterba*, *supra*, 228 Cal.App.4th at p. 41.)  However, the court concluded that the plaintiff's cause of action for declaratory relief did not arise from that protected activity.  "Although the prelitigation letters may have triggered Gotterba's complaint and may be evidence in support of the complaint, they are not the basis of the complaint."  (*Id*. at p. 42.)  The court determined that protected activity did not supply the elements of the plaintiff's claim because "If the threats of litigation were removed from Atlo's demand letters, the same dispute would exist regarding the terms of the termination agreement."  (*Ibid*.)  "The complaint seeks declaratory relief regarding the validity of the asserted termination agreements and not the propriety of [the defendants'] demand letters.  [¶]  . . .  That 'protected activity may lurk in the background—and may explain why the rift between the parties arose in the first place—does not transform a [contract] dispute into a SLAPP suit.'  [Citation.]"  (*Id*. at pp. 41–42.)  The court also noted the plaintiff's lawsuit did not seek to curtail the defendant's right to send demand letters.  (*Ibid*.)

The court in *City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301 (*City of Alhambra*) reached the same result.  In that case, a former employee of the City of Alhambra sued the city for civil rights violations and eventually settled with the city.  (*Id*. at pp. 1303–1304.)  As part of the settlement, he agreed that he would not represent or advocate for any city employees, including members of the Alhambra Firefighter's Association (AFA).  (*Ibid*.)  A year after the settlement was signed, the city became aware that the

16

former employee participated in an AFA meeting and advocated that the AFA participate in a demonstration against the city. (*Ibid.*) He also personally took part in a protest while wearing an AFA shirt. (*Ibid.*)

In response, the city filed a lawsuit against him, claiming his actions breached the settlement agreement. (*City of Alhambra, supra,* 193 Cal.App.4th at p. 1304.) The city's complaint included a cause of action for declaratory relief, seeking a judicial determination of the defendant's obligations under the settlement agreement. (*Id.* at p. 1305.) The defendant filed an anti-SLAPP motion to strike the cause of action for declaratory relief. The trial court denied the motion, finding the cause of action for declaratory relief did not arise from the defendant's protected activity. (*Ibid.*) The Court of Appeal affirmed. In doing so, the court recognized the city's lawsuit was triggered by the defendant's protected petitioning activities. (*Id.* at p. 1307.) The court nonetheless concluded that the city's "declaratory relief claim arises from a contract dispute; it does not arise from actions taken by appellant in furtherance of his constitutional rights." (*Id.* at p. 1309.)

The same result follows here. While it is undisputed that the Bank's cross-complaint was triggered by Ultimate Action's filing of the instant lawsuit, that does not establish that the Bank's claims are based on Ultimate Action's petitioning activity. The Bank's causes of action for quiet title and declaratory relief stem from a dispute between Ultimate Action and the Bank regarding the validity of the loan agreement between the Company and the Bank. That Ultimate Action chose to communicate this disagreement by filing a lawsuit does not mean the Bank's claims are based on protected activity. It is the existence of the dispute itself that forms the basis of the Bank's claims, not the forum or vehicle by which Ultimate Action communicated that dispute to the Bank. If Ultimate Action simply called the

17

Bank and informed it of this dispute by phone, there would be no question that section 425.16 would not apply to the Bank's claims. Ultimate Action's filing of the instant lawsuit is thus evidence in support of the Bank's claims for quiet title and declaratory relief, but it is not the basis of those claims.

Ultimate Action has also made no showing that the filing of this action supplies one or more elements of the Bank's third cause of action for equitable lien by subrogation. The doctrine of equitable subrogation "'is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter.' [Citations.]" (*Caito v. United California Bank* (1978) 20 Cal.3d 694, 704.) The Bank's third cause of action for equitable lien by subrogation stems from the use of the Bank's loan proceeds to satisfy the Company's pre-existing debts, not Ultimate Action's filing of this action. This cause of action does not seek damages against Ultimate Action or seek to impose liability against Ultimate Action based on the filing of this lawsuit. Instead, it seeks a lien against the Company's real property to secure repayment of the loan proceeds, which the Company accepted and used for its benefit. The fact that this third cause of action was triggered by Ultimate Action's filing of the lawsuit does not establish that the cause of action arises from protected activity.

We find that Ultimate Action has failed to carry its burden to show the challenged causes of action arise from protected activity. As Ultimate Action has not satisfied the first prong of the anti-SLAPP analysis, we affirm the trial court's order denying Ultimate Action's anti-SLAPP motion to strike without reaching the question of whether the Bank has established a probability of success on the merits of its claims.

18

## DISPOSITION

The order denying Ultimate Action's anti-SLAPP motion to strike is affirmed.  The Bank's motion for sanctions is denied.  The Bank is awarded its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, J.

We concur:


CURREY, P. J.


COLLINS, J.