Filed 2/19/26  Cardenas Markets v. The Continental Corp. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| CARDENAS MARKETS, LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>THE CONTINENTAL<br>CORPORATION, LTD.,<br><br>    Defendant and Appellant. | D084812<br><br><br>(Super. Ct. No. CVRI2305579) |


APPEALS from an order of the Superior Court of Riverside County, Daniel Ottolia, Judge.  Affirmed.

Troutman Pepper Locke, Amin Al-Sarraf, William Mullen, and David Rutan for Plaintiff and Appellant.

Brian C. Ostler; Jeff Lewis Law, Jeffrey Lewis and Kyla Dayton for Defendant and Appellant.


Cardenas Markets, LLC (Cardenas) brought this action against its landlord, The Continental Corporation, LTD (Continental).  In a first amended complaint, Cardenas alleged eleven causes of action, including a

cause of action for declaratory relief, as well as several contract, tort and statutory causes of action.

Continental filed an anti-SLAPP motion (Code Civ. Proc., § 425.16)[1] in which it claimed that all of Cardenas's causes of action were based on protected activity, namely Continental's litigation-related activity against Cardenas. The trial court denied the motion as to the declaratory relief cause of action on the ground that it sought an interpretation of the parties' lease (and an amendment to the lease) and thus was not based on protected petitioning activity. The trial court, however, ruled that all the other causes of action were "based on allegations of harassment" that were rooted in Continental's litigation-related activity and, as such, constituted protected activity under the anti-SLAPP statute. The court further ruled that Cardenas could not establish a likelihood of prevailing on any of these ten causes of action given the litigation privilege (see Civ. Code, § 47, subd. (b)).

Both parties appeal. In its appeal, Cardenas claims the trial court erred insofar as it granted the anti-SLAPP motion as to ten of the eleven causes of action in its first amended complaint. In its cross-appeal, Continental contends the trial court erred in denying its anti-SLAPP motion as to the declaratory relief cause of action. We affirm the order in its entirety.

FACTUAL AND PROCEDURAL BACKGROUND

1. *The first amended complaint*

Cardenas filed a first amended complaint against Continental alleging eleven causes of action styled as follows: declaratory relief; breach of contract – original lease; breach of the implied covenant of good faith and fair dealing

---

[1] Unless otherwise specified, all subsequent statutory citations are to the Code of Civil Procedure.

2

– original lease; breach of contract – May 2023 amendment; breach of the implied covenant of good faith and fair dealing – May 2023 amendment; breach of implied covenant of quiet enjoyment; violation of Civil Code section 1940.2; private nuisance; intentional interference with prospective economic relations; negligent interference with prospective economic relations; and unfair business practices.

In an introductory section, Cardenas alleged that it had leased certain property from Continental for the purpose of operating a grocery store. According to Cardenas, after Continental had made a series of baseless complaints that Cardenas had violated the lease, the parties agreed to a lease amendment in "an effort to resolve these various disputes." Cardenas further alleged that such efforts were unsuccessful in resolving the parties' disagreements and that Continental had subsequently served a series of "Three-Day Notices to perform or quit,"[2] and an "unlawful detainer action to forfeit the lease and to remove [Cardenas] from the Premises." Cardenas explained further that, through this lawsuit, it sought "the Court's intervention to confirm the parties' obligations under the applicable lease for the Premises and to prevent future harm to [Cardenas]."

In a section entitled "facts common to all claims for relief," Cardenas discussed the underlying lease and the May 2023 amendment thereto, as well as Continental's alleged "harassing conduct" in connection with the lease and the amendment. (Boldface and capitalization omitted.) Many of these facts

_____

[2]    A three-day notice to perform or quit serves as predicate to an unlawful detainer action. (See Code Civ. Proc., § 1161; see generally Friedman et al., Cal.Practice Guide: Landlord-Tenant (The Rutter Group 2025) Bases for Terminating Tenancy, Ch. 7-C.)

pertained to Continental's serving of three-day notices against Cardenas and its filing of an unlawful detainer action against Cardenas.

For example, Cardenas explained that its relationship with Continental began in the summer of 2022 when it assumed the lease of Continental's former tenant. Since that time, Continental had repeatedly claimed that Cardenas was in default of obligations allegedly owed to Continental under the lease. For example, Cardenas summarized an October 2022 dispute over the amount of monthly rent due. Cardenas also explained that the parties entered a May 2023 amendment to the lease which pertained to "[Cardenas's] minimum monthly rent and percentage rent payable for the remaining term of the Lease, other amounts of money that [Cardenas] would pay [Continental] in connection with the Operative Lease through the remainder of the term, and [Cardenas's] agreement to conduct certain maintenance work on the Premises that [Continental] flagged as problematic."

Cardenas further alleged that Continental had engaged in "harassing conduct" in connection with the lease, including making numerous claims of "alleged defaults" through the service of "three different sets of Three-Day Notices to perform or quit on [Cardenas]." After describing three-day notices served in December 2022 pertaining to rent and legal fees and a second set of three-day notices served in March 2023 pertaining to rent, sales, and store conditions, Cardenas explained that it had agreed to a May 2023 amendment of the lease in an attempt to curtail such harassment and "move past these unceasing claims of violations."

Cardenas explained in the complaint, however, that such efforts were unsuccessful. Instead, Cardenas noted that Continental served a third set of three-day notices in August 2023, which Continental "served again on September 1, 2023." Cardenas described, in detail, the numerous alleged

4

violations outlined in this third set of three-day notices, as well its view that "none of the complaints that [Continental] raised in Three-Day Notices had any evidentiary basis."

Cardenas further alleged that Continental had made a series of demands for legal fees from Cardenas in connection with the three-day notices, which were unfounded. Cardenas also alleged that Continental's attorney had filed a request with a state agency for a levy to be issued against Cardenas for a portion of the attorney's fees. In addition, Cardenas alleged that Continental had invited certain municipal code enforcement representatives onto the leased premises in connection with a false claim that Cardenas had constructed unpermitted improvements.

Cardenas also stated that, in September 2023, Continental had filed an unlawful detainer action against it referencing the alleged lease violations contained in the most recent set of three-day notices. Cardenas alleged that "[i]t is evident based on [Continental's] latest actions, including filing the [unlawful detainer action], that it will not stop harassing [Cardenas,] which is severely disrupting [Cardenas's] grocery store business on the Premises." Finally, Cardenas claimed that it had suffered money damages as a "direct result of [Continental's] many complaints."

The first amended complaint incorporated all these factual allegations pertaining to the parties' relationship in eleven substantive causes of action.

In its cause of action for declaratory relief (first cause of action), Cardenas alleged that there was an actual controversy concerning the parties' "respective rights and duties" in connection with the lease. Cardenas further sought a declaration that it had not breached the lease, Continental had breached the lease, and that Cardenas was not required to pay Continental's legal fees in connection with the lease.

5

In each of four contract-based causes of action (second through fifth causes of action), Cardenas alleged that Continental had breached the original lease and the May 2023 amendment as well as the related implied covenants of good faith and fair dealing by engaging in "harassing" conduct. For example, with respect to the breach of contract cause of action pertaining to the original lease, Cardenas contended that Continental had "breached the Original Lease by, among other things, (a) seeking to remove [Cardenas] from the Premises, (b) insisting that [Cardenas] pay [Continental's] legal fees in connection with purported breaches of the Original Lease, and (c) demanding that [Cardenas] remedy purported defects on the Premises which are either not [Cardenas's] responsibility or do not require any renovation."

In its causes of action related to quiet enjoyment and nuisance (sixth through eighth causes of action), Cardenas alleged that Continental's actions had interfered with its "quiet enjoyment" in the leased property, and that Continental's actions "would create an apprehension of harm in a reasonable person," and that Continental had obstructed Cardenas's "comfortable enjoyment" of the leased property.

In its interference with prospective economic relations causes of action (ninth and tenth causes of action), Cardenas alleged that Continental's "harassing and badgering conduct," including its misrepresentation to municipal officials that Cardenas had violated the municipal code, had interfered with Cardenas's relationships with its customers and vendors.

Finally, in a cause of action for unfair business practices (eleventh cause of action), Cardenas alleged that Continental had utilized unfair business practices designed to preclude Cardenas from operating a grocery store. Cardenas sought a permanent injunction prohibiting Continental from undertaking such practices, including engaging in "harassing conduct

6

whereby [Continental] repeatedly asserts that [Cardenas] violated terms of the Operative Lease, and (2) [Continental's] demands for additional legal fees for notifying Plaintiff of these purported violations."

2. *Continental's anti-SLAPP motion*

Continental filed an anti-SLAPP motion. Continental maintained that each of Cardenas's causes of action in the first amended complaint was based on "the premise that Continental's filing of the [unlawful detainer action], and the necessary and proper steps leading to the filing (pre-litigation demand letters and e-mails, settlement negotiations, entering into a settlement agreement, and three-day notices to perform covenants or quit, or pay rent or quit), have caused it harm, or have the potential to cause it harm, as it sets forth in each and every one of its causes of action." Continental further argued that "the allegations arise out of [Continental's] steps to file and litigate a lawsuit," which constituted constitutionally protected activity under the anti-SLAPP law.

With respect to the declaratory relief cause of action, Continental argued that "Cardenas seeks declaratory relief on the same matters that are alleged in the [unlawful detainer action]." Continental argued the remaining causes of action in the first amended complaint were each based on Continental's alleged "harassing and detrimental conduct," which Continental explained constituted protected litigation-related activity.

Continental further maintained that Cardenas would not be able to demonstrate a probability of prevailing on any of its causes of action because it would not be "able to substantiate the allegations of each or any of the causes of action." In particular, Continental argued that each of Cardenas's causes of action was barred by the litigation privilege (Civ. Code, § 47, subd. (b)) and could not otherwise be substantiated.

7

Continental supported its motion with a declaration from its counsel describing the relationship between the parties. In addition, counsel attached a series of exhibits to his declaration, including those related to Continental's unlawful detainer action, three-day notices, and communications between the parties and their representatives, as well as Cardenas's responses to certain interrogatories in this lawsuit, and citations from code enforcement officials. Continental also requested that the court take judicial notice of its complaint and Cardenas's answer in the related unlawful detainer action, as well as citations from a municipal code enforcement proceeding related to the premises.

3. *Cardenas's opposition*

Cardenas filed an opposition to the anti-SLAPP motion in which it argued that none of the causes of action in the first amended complaint were based on protected activity, and that, in any event, it could show a probability of prevailing on the merits.

Cardenas first argued that its causes of action were not based on the unlawful detainer action, the three-day notices, or any of the other prelitigation communications, but instead arose "from the parties' disputes about the terms in the relevant lease that govern Cardenas' tenancy and that led to [Continental's] incessant harassment and badgering of Cardenas." Cardenas alleged that the protected activity referred to by Continental was merely " 'evidence' " that supported Cardenas's claim that there were disputes between the parties related to their obligations under the lease. Cardenas further argued that, in any event, Continental's claims of default from October 2022 through September 2023 never related to litigation that was contemplated in good faith, since the unlawful detainer action was not filed until September 2023 and Continental never informed Cardenas that it

8

was planning to file an unlawful detainer action based on the three-day notices filed before then.

With respect to the probability of prevailing, Cardenas argued that the litigation privilege did not apply for similar reasons to those discussed above, namely that its causes of action were related to several disputes about the parties' obligations under the lease rather than any litigation-related activity and that, in any event, Continental's claims of default were not made in good faith.

Cardenas further argued that it had adequately alleged a declaratory relief cause of action and that its discovery responses revealed a dispute between the parties regarding the obligations under the lease. Cardenas also maintained that it had "properly state[d]" its breach of contract claims, based on Continental's unsubstantiated allegations of breach of contract as outlined in Cardenas's responses to Continental's interrogatories. Cardenas similarly maintained that its interrogatory responses provided an adequate evidentiary foundation for each of its other causes of action.

Cardenas supported its motion with a declaration from its counsel, which included as attachments two sets of three-day notices served on Cardenas along with correspondence pertaining to a notice of levy that Cardenas received from a state agency pertaining to Continental's attorney.

4. *The trial court's ruling*

After Continental filed a reply, the trial court issued a tentative ruling on the anti-SLAPP motion. The court denied the motion as to the first cause of action for declaratory relief on the ground that the cause of action "seeks an interpretation of the Lease Agreement and the May 2023 Amendment to the Lease Agreement, and therefore does not involve protected petitioning activity." The court, however, granted the anti-SLAPP motion as to the

9

remaining causes of action. It reasoned: "These causes of action are all based on allegations of harassment that arise from [Continental's] actions and communications in connection with the unlawful detainer action. This is protected activity which falls within the ambit of the anti-SLAPP statute. While [Cardenas] characterizes [Continental's] conduct as general harassment and extortion that interferes with [Cardenas's] covenant of quiet enjoyment under the lease, it is clear that the demand letters, including the demand for attorney's fees, the Notices and the [unlawful detainer] action form the basis of the harassment claims. Because the alleged harassment involves communications made in contemplation of litigation, the claims are protected by the litigation privilege, and [Cardenas] cannot establish a likelihood of prevailing."

The court held a hearing on the anti-SLAPP motion at which it granted Continental's requests for judicial notice and took the motion under submission. After the hearing, the court confirmed its tentative ruling denying Continental's anti-SLAPP motion as to the declaratory relief cause of action and granting the motion as to the remaining causes of action.

5. *The appeals*

Cardenas filed an appeal from the court's order on the anti-SLAPP motion. Continental subsequently filed a cross-appeal from the same order.

DISCUSSION

I.

"The anti-SLAPP statute enables courts, early in litigation, to strike meritless claims in lawsuits when those claims risk chilling 'continued participation in matters of public significance.' (§ 425.16, subd. (a); see *id.*, subds. (b)(1), (f).) 'A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech

10

under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' (*Id.*, subd. (b)(1).)" (*Serova v. Sony Music Entertainment* (2022) 13 Cal.5th 859, 871.)

The statute defines " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' " to include in relevant part: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, . . . or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

"Litigation of an anti-SLAPP motion involves a two-step process. First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.] Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit." ' [Citation.] If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.)

To determine whether a defendant has shown that a claim arises from protected activity, courts consider "whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition

11

or free speech." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78, italics omitted.)  The focus is not the form of the cause of action or claim, "but, rather, the defendant's activity that gives rise to his or her asserted liability — and whether that activity constitutes protected speech or petitioning." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92 (*Navellier*), italics omitted.)  A "claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1060 (*Park*).)

In carrying out this inquiry, "courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' " (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*).)  "Courts then must evaluate whether the defendant has shown any of these actions fall within one or more of the four categories of ' "act[s]" ' protected by the anti-SLAPP statute." (*Ibid.*)

If the defendant makes the required showing as to the first step, "the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.)  This step has been "described . . . as a 'summary-judgment-like procedure,' " (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*)) in which the inquiry is "limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment." (*Id.* at pp. 384–385.)  In addition, "[t]he litigation privilege is also relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must

overcome to demonstrate a probability of prevailing." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 323.)

We review the grant or denial of an anti-SLAPP motion de novo. (See *Park, supra*, 2 Cal.5th at p. 1067.)

II.

*Cardenas's Appeal*

Cardenas claims that the trial court erred insofar as it granted Continental's anti-SLAPP motion as to ten of the eleven causes of action in the first amendment complaint. Cardenas maintains that the trial court erred both in determining that Continental had carried its burden in demonstrating that the stricken causes of action were based on protected activity and in determining that Cardenas had failed to demonstrate a probability of prevailing on these causes of action. We consider each argument in turn.

A.  *The trial court did not err in concluding Continental had carried its burden of demonstrating that the stricken causes of action were based on protected activity*

It is well settled that "the basic act of filing litigation" is a protected activity for purposes of the anti-SLAPP law. (*Navellier, supra*, 29 Cal.4th at p. 90 (internal quotation marks omitted); see, e.g., *Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1480 (*Feldman*) [concluding that the "filing of an unlawful detainer action" is protected activity within the meaning of section 425.16].)

" ' "The anti-SLAPP protection for petitioning activities applies not only to the filing of lawsuits, but extends to conduct that relates to such litigation, including statements made in connection with or in preparation of litigation. [Citation.] Indeed, courts have adopted 'a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16.' " '

13

[Citation.] [¶] Even where litigation has not commenced, 'if a statement "concern[s] the subject of the dispute" and is made "in anticipation of litigation 'contemplated in good faith and under serious consideration,' " [citation] then the statement may be petitioning activity protected by section 425.16.' " (*Cocoa AJ Holdings, LLC v. Schneider* (2025) 115 Cal.App.5th 980, 991; see also *RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co., Inc.* (2020) 56 Cal.App.5th 413, 425 ["Statements made in preparation for litigation or in anticipation of bringing an action," amount to protected activity under the anti-SLAPP statute].)

Thus, for example, the *Feldman* court reasoned that since "[s]ervice of a three-day notice to quit was a legally required prerequisite to the filing of the unlawful detainer action," the defendants' "service of the three-day notice to quit was a communication preparatory to the bringing of the unlawful detainer action." (*Feldman, supra*, 160 Cal.App.4th at p. 1480.) Therefore, the *Feldman* court concluded, "[s]ervice of the three-day notice to quit in this case was also protected activity within the meaning of section 425.16." (*Ibid.*) The *Feldman* court also said that a series of "alleged 'threats,' " made by the landlord's representative to a tenant pertaining to his tenancy were "[c]learly . . . communications in connection with an ongoing dispute and in anticipation of litigation." (*Id.* at p. 1481.)[3]

---

3    The *Feldman* court described the statements as follows: "According to [a] declaration [from one of the tenants], on June 24, 2005, [the landlord's representative] made the following threatening comments to him: '(A) That he has done hundreds of evictions, so he knows the landlord will win, and how many had we done? [¶] (B) That regardless of the outcome of the current case, my wife and I will never be able to rent another apartment in San Francisco; [¶] (C) That he understands the law and has discussed the case with his uncle, who is a federal judge; [¶] (D) That we will not be able to file suit against them because they will win; [and] [¶] (E) That we could not have read the Addendum properly.' " (*Feldman, supra*, 160 Cal.App.4th at

14

Echoing the contentions that it raised in its opposition in the trial court, Cardenas raises two primary arguments in support of its claim that the trial court erred in concluding Continental had carried its burden in demonstrating that the stricken causes of action were based on protected activity. First, Cardenas maintains that the trial court erred in concluding that the stricken causes of action were based on the filing of the unlawful detainer action and the prefatory steps leading to that filing. Cardenas claims, instead, that the stricken causes of action arose from the *disputes* that led to such litigation activity and Continental's harassment related to such disputes rather than the litigation-related activity itself. (Citing *Ulkarim v. Westfield LLC* (2014) 227 Cal.App.4th 1266 and *Copenbarger v. Morris Cerullo World Evangelism* (2013) 215 Cal.App.4th 1237 (*Copenbarger*).)

We are not persuaded. Rather than discussing the elements of each of the stricken causes of action and demonstrating that the trial court erred in concluding that such elements were based on protected activity (see *Wilson, supra*, 7 Cal.5th at p. 884 [outlining manner by which a court determines whether a complaint is based on protected activity]), Cardenas suggests that the first amended complaint merely sought a declaration of the parties' obligations under the lease. It argues: "Among other things, Cardenas allege[d] that it 's[ought] the Court's intervention to confirm [] the parties' obligations under the applicable lease for the Premises and to prevent future harm to [Cardenas].' [Citation.] Likewise, Cardenas allege[d] that 'Defendant contends that many of these alleged problems constitute violations of the relevant lease agreement' while Cardenas 'contends that

pp. 1474–1475; see *id.* at p. 1475 [noting that the relevant cross-complaint was based in part on these alleged facts].)

15

none of Defendant's demands amount to breaches of the lease agreement at issue. . . .' [citation.]"

This argument is unpersuasive as to the stricken causes of action because while these allegations served as a basis for the declaratory relief cause of action, which the trial court did *not* strike, Cardenas fails to explain how the elements of *stricken* contract, quiet enjoyment, interference, and unfair competition causes of action were based on unprotected activity. Thus, while as we explain below in connection with Continental's appeal, allegations of litigation-related activity between the parties that were incorporated into the declaratory relief cause of action may reasonably be interpreted as merely serving as the evidence of disputes that give rise to *that* cause of action, Cardenas fails to explain how these allegations can so be interpreted in determining the basis of the remaining *stricken* causes of action. Accordingly, Cardenas has failed to demonstrate that the trial court erred in concluding that the stricken causes of action were based on protected activity. (See, e.g., *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*) [error must be affirmatively shown].)

While we need not discuss each of the stricken causes of action in light of Cardenas's cursory argument, which fails to do so, our own analysis of the first amended complaint reveals no error. Consider the contract-related causes of action. As recounted above, Cardenas contended that Continental had breached the lease by, among other things, seeking to remove Cardenas from the premises, seeking legal fees in connection with its claims that Cardenas had breached the lease, and making unreasonable demands of Cardenas under the lease. Thus, as in *Feldman*, "[t]he activities that allegedly breached the contract *were* the protected activities." (*Feldman, supra*, 160 Cal.App.4th at p. 1484; see *ibid*. [alleged breaching activities were

16

"illegally evicting" tenant, making threats, serving three-day notice, and filing of the unlawful detainer action]; compare with *Noon v. Fuentes* (2025) 116 Cal.App.5th 651, 654 [concluding that landlord's conduct in "wrongfully evict[ing] tenants from six of his units," was not protected by the anti-SLAPP statute merely because he filed an unlawful detainer action against a *different* tenant].)

In the same vein, Cardenas argues that none of its causes of action were based on " 'settlement communications.' " Yet, the first amended complaint is replete with allegations pertaining to, as that document expressly states, the parties "effort[s] to resolve . . . various disputes," which "extended over one year." Cardenas fails to explain how its characterization of such negotiations (as well as Continental's demands for performance under the lease) as "harassment" demonstrates that the stricken causes of action were based on unprotected activity.

Second, Cardenas separately argues that none of the stricken causes of action in the first amended complaint are protected because such statements purportedly were not made in connection with litigation "contemplated in good faith and under serious consideration" at the time the statements were made. (Quoting *People ex rel. Allstate Ins. Co. v. Rubin* (2021) 66 Cal.App.5th 493, 499 (*Allstate*).) In its opening brief, Cardenas supported this argument by contending that Continental's claims were not based on protected activity insofar as they were premised on the three-day notices that Continental served on Cardenas in December 2022, March 2023, and August 2023 because, according to Cardenas, "at no point did [Continental] inform Cardenas that it was planning to file any unlawful detainer lawsuits based on these notices."

17

We are not aware of any authority, and Cardenas cites none, suggesting that a three-day notice constitutes protected activity only if a landlord informs the tenant that it intends to file an unlawful detainer action based on such a notice. Given that a three-day notice is a statutorily mandated prerequisite to the filing of an unlawful detainer action (see, e.g., *Feldman, supra*, 160 Cal.App.4th at p. 1480), the three-day notice itself reflects the possibility that a landlord may file such an action. Moreover, in this case, Continental's good faith notices expressly informed Cardenas that if it failed to remedy the alleged violations or vacate the premises, "legal proceedings will be instituted against you." Accordingly, we reject Cardenas's argument that Continental failed to demonstrate that the three-day notices served prior to September 1, 2023 amounted to protected activity as statements made in connection with "anticipated litigation."[4]

In its reply brief, Cardenas argues more broadly that because many of Continental's three-day notices and communications did not lead to immediate litigation, such communications were not made with litigation contemplated in good faith and under serious contemplation. Cardenas notes that in *Allstate*, the court stated, " '[W]hen a cause of action arises from conduct that is a "necessary prerequisite" to litigation, but will lead to litigation only if negotiations fail or contractual commitments are not honored, future litigation is merely theoretical rather than anticipated and the conduct is therefore not protected prelitigation activity.' " (*Allstate, supra*, 66 Cal.App.5th at 499.) Yet, the case from which this principle

---

4    Cardenas itself alleges that Continental's August 2023 three-day notices were made in connection with anticipated litigation. According to the first amended complaint, "[Continental's] third set of Three-Day Notices to perform or quit was first served on August 19, 2023, *and then served again on September 1, 2023*," and that the September 1, 2023 three-day notices "were attached to the [unlawful detainer] action." (Italics added.)

18

is derived, *Mission Beverage Co. v. Pabst Brewing Co., LLC* (2017) 15 Cal.App.5th 686 (*Mission Beverage*), involved actions far more removed from the litigation process than the actions at issue in this case. In *Mission Beverage*, the Court of Appeal concluded that a brewer's letter terminating distributorship rights did not qualify as protected activity, notwithstanding that such letter *might* have resulted in a statutorily mandated arbitration between the existing distributor whose rights were being terminated and the successor distributor *if* negotiations were to fail between the two pertaining to the fair market value of the affected distributorship rights. (*Id.* at p. 704; see *id.* at p. 696.) The *Mission Beverage* court emphasized that the brewer would have "had 'no reason to believe' that arbitration 'w[ould] follow' from its letter." (*Id.* at p. 704.) Here, in contrast, Continental expressly notified Cardenas of the possibility of litigation and Cardenas had reason to suspect that litigation might arise following Continental's prelitigation demands.

Nor does *Allstate* itself support the conclusion that Continental's communications did not amount to protected prelitigation activity. In *Allstate*, the court concluded that a physician's "submission of claims to an insurer for payment in the regular course of business prior to the commencement of litigation is not an act 'in furtherance of [the] right[] of petition' within the meaning of the anti-SLAPP statute." (*Allstate, supra*, 66 Cal.App.5th at p. 499.) The *Allstate* court endorsed the trial court's reasoning in that case that the fact that the bills " 'might eventually become evidence of damages in personal injury litigation,' " (*id.* at p. 501) was far too tenuous of a connection to litigation activity to fall within the anti-SLAPP statute, particularly since the "preparation of medical reports and bills in support of insurance claims against Allstate were apparently [the physician's] routine and usual course of business." (*Id.* at p. 502.) Sending medical reports and

19

bills to an insurer "which may or may not . . . result[] in litigation," (*ibid.*) bears little resemblance to Continental's alleged actions in this case — filing actual litigation, serving three-day notices expressly threatening litigation, and sending demand letters in the course of a live dispute.

In conclusion, we reject Cardenas's argument that the trial court erred in concluding Continental had carried its burden of demonstrating that the stricken causes of action were based on protected activity.

B.    *The trial court did not err in concluding Cardenas had failed to carry its burden of demonstrating a probability of prevailing on the stricken causes of action*

Cardenas also contends that the trial court erred in concluding that it had failed to carry its burden of demonstrating a probability of prevailing on the stricken causes of action based on protected activity.

As noted above, at the second step of anti-SLAPP motion, a plaintiff is required to point to evidence in the record that, if credited, would sustain a judgment in its favor on the stricken causes of action. (See *Baral, supra*, 1 Cal.5th at pp. 384–385.) In carrying this burden, the plaintiff must identify "competent admissible evidence" sufficient to establish its causes of action. (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940 (*Sweetwater*).) Such evidence includes "affidavits, declarations, and their equivalents if it is reasonably possible the proffered evidence set out in those statements will be admissible at trial." (*Id.* at p. 949.) Furthermore, on appeal, in determining whether the appellant has carried its fundamental burden of demonstrating error (see, e.g., *Denham, supra*, 2 Cal.3d at p. 564), we are not obligated "to cull the record for the benefit of the appellant." (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 455 (*Bains*).) That is so even where, as here, the de novo standard of review applies. (*Ibid.*)

Thus, in order to demonstrate error, Cardenas is required to present

20

a cognizable argument that there is competent evidence in the record that would sustain a judgment in its favor on the stricken causes of action. It has failed to do so with respect to any of the stricken causes of action. Indeed, the *only* references to any evidence in its briefing on appeal are citations to its *own interrogatory responses*. Such responses are not reasonably likely to be directly admissible at trial to prove Cardenas's claims. (See Code Civ. Proc., § 2030.410 ["At the trial or any other hearing in the action, so far as admissible under the rules of evidence, the propounding party or any party *other than the responding party* may use any answer or part of an answer to an interrogatory only against the responding party"].) Put another way, "the responding party may not use its own interrogatory responses in its own favor." (*Great American Ins. Cos. v. Gordon Trucking, Inc.* (2008) 165 Cal.App.4th 445, 450; see Fairbank et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2025) ¶ 8:825, p. 180 [interrogatory answers "are admissible only *against* the responding party"].) Nor has Cardenas provided any explanation on appeal as to how any of its own interrogatory responses refer to competent evidence that is reasonably likely to be admissible at trial sufficient to sustain a judgment in its favor.

For example, with respect to its contract-based causes of action, Cardenas argues, "Defendant breached the Original Lease and May 2023 Amendment by claiming that there were several alleged defaults under these contracts despite there not being any evidence to support them, as well as demanding that Cardenas pay Defendant's legal fees in connection with these demands. (*2RA 364-368, 382-384, 386-388.*)" The italicized citations all refer exclusively to Cardenas's own interrogatory responses. Cardenas, however, offers no explanation for how the numerous documents broadly referenced in these responses amount to competent evidence that demonstrates the

21

sufficiency of its contract-based causes of action. Moreover, the documents referred to in Cardenas's interrogatory responses were not attached thereto and Cardenas did not include any such documents along with its anti-SLAPP papers.[5]

Furthermore, a review of the cited pages reveals the interrogatory responses frequently referred to numerous vaguely described documents and thus cannot be said to amount to "competent admissible evidence" demonstrating a probability of prevailing on the challenged causes of action. (*Sweetwater, supra*, 6 Cal.5th at p. 940.) Consider just one page in the long citation list cited above — page 366 of the respondent's appendix, which responds to Continental's interrogatory asking Cardenas to identify all documents demonstrating that it breached the original lease. Cardenas substantively responded: "The documents that are responsive to this Interrogatory will be produced in response to Defendant's notice of deposition of the person most knowledgeable for Plaintiff also produced in response to Defendant's document requests served in the unlawful detainer case that Defendant filed against Plaintiff. Also, the letter and e-mails exchanged between Defendant's counsel, Mr. Ostler, and Plaintiff since October 2022 regarding the Premises. In addition, the documents that comprise the Operative Lease, as defined in Plaintiff's operative First Amended Complaint." Citations to interrogatory responses referring to broad categories of unproduced documents without any attempt to establish a reasonable likelihood of either admissibility or substantive relevance does not

---

[5] While, as noted above, Continental lodged some communications between the parties and their representatives as exhibits to its anti-SLAPP motion, Cardenas did not demonstrate in the trial court how such documents related to its interrogatory responses or how any of these documents constituted evidence demonstrating a probability of prevailing.

demonstrate that Cardenas carried its burden of demonstrating that it could present sufficient competent evidence sufficient to sustain a judgment in its verdict.

Cardenas's arguments as to its other causes of action are similarly deficient. For example, with respect to its quiet enjoyment, Civil Code section 1940.2 and private nuisance causes of action, Cardenas argues: "Defendant's many claims that Cardenas breached the relevant lease, must pay Defendant's attorney's fees and must make certain repairs and improvements to the Premises interfered with Cardenas' quiet and comfortable enjoyment of the Premises as well as constituted 'willful threats and menacing conduct.' (Civ. Code, § 1940.2(a)(3); *2RA 402-446*.)" (Italics added.) Cardenas's unexplained citation to 40 pages of its own interrogatory responses does not demonstrate error. (See, e.g., *Bains, supra*, 172 Cal.App.4th at p. 455.) Its arguments as to the evidentiary basis for its economic interference and unfair business practices causes of action also refer exclusively to its own interrogatory responses and fail for the same reason.

In sum, we conclude that Cardenas has failed to demonstrate that there is competent evidence in the record that would sustain a judgment on its favor on any of the stricken causes of action. Accordingly, we reject Cardenas's argument that the trial court erred in concluding it failed to carry its burden of demonstrating a probability of prevailing on the stricken causes of action.[6]

---

6    As noted in the factual and procedural background, the trial court concluded that Cardenas could not establish a probability of prevailing for a different reason, namely, that all of its causes of action were barred by the litigation privilege. In conducting our de novo review, however, we may affirm the court's judgment on an alternative ground supported by the record.

C. *Conclusion*

We have concluded that Cardenas failed to demonstrate the trial court erred in determining Continental had carried its burden in demonstrating that the stricken causes of action were based on protected activity or in determining Cardenas did not demonstrate a probability of prevailing on these causes of action. Accordingly, we further conclude the trial court did not err in granting the anti-SLAPP motion as to each of the stricken causes of action.

## III.

### *Continental's Appeal*

Continental claims that the trial court erred insofar as it denied its anti-SLAPP motion as to Cardenas's declaratory relief cause of action. Specifically, Continental maintains that the trial court erred in determining that Cardenas's declaratory relief cause of action did not arise from petitioning activity.

" ' " 'The purpose of a declaratory judgment is to "serve some practical end in quieting or stabilizing an uncertain or disputed jural relation." ' [Citation.] 'Another purpose is to liquidate doubts with respect to uncertainties or controversies which might otherwise result in subsequent litigation [citation].' [Citation.]" [Citation.]' " (*Osseous Technologies of America, Inc. v. DiscoveryOrtho Partners LLC* (2010) 191 Cal.App.4th 357,

---

(See, e.g., *Friends of South Fork Gualala v. Department of Forestry & Fire Protection* (2024) 106 Cal.App.5th 1180, 1202 ["[w]e review the result the trial court reached, not its legal reasoning, and we may affirm on any ground supported by the record, unconstrained by the route the trial court took in getting there"].) We do so here, given that Cardenas has plainly failed to identify competent evidence in the record to support a judgment in its favor on any of the stricken causes of action, irrespective of any potential litigation privilege defense.

364.) "[A] declaratory action to identify rights is distinct from a coercive action to enforce rights." (*Caira v. Offner* (2005) 126 Cal.App.4th 12, 24.)

In *WasteXperts, Inc. v. Arakelian Enterprises, Inc.* (2024) 103 Cal.App.5th 652, 660–661 (*WasteXperts*), the Court of Appeal discussed the manner in which courts determine whether the allegations of a declaratory relief cause of action arise from protected activity for purposes of the anti-SLAPP law. The *WasteXperts* court explained: "Declaratory relief claims arise from the dispute to be resolved, and that dispute itself is necessarily based on at least two competing positions. . . . To separate communications which form the source of the dispute from those that merely provide evidence of it, courts ask whether 'the same dispute would exist' if there were no pending threat of litigation. (*Gotterba v. Travolta* (2014) 228 Cal.App.4th 35, 42 [175 Cal.Rptr.3d 47] (*Gotterba*).)" (*WasteXperts,* at pp. 660–661.)

Continental claims that that Cardenas's declaratory relief cause of action arises out of protected activity because, according to Continental, Cardenas sought, through this cause of action, a determination that the protected activity of the "filing of the [unlawful detainer] [a]ction was wrongful, that the service of three waves of [three]-day notices was wrongful, that the attempt to levy through the EDD was wrongful and that the pre-litigation settlement negotiations were wrongful and harassing." We disagree.

In *Copenbarger*, a sublessee filed a complaint against a sublessor and others after the sublessor's agent served a 30-day notice to quit on the sublessee. (*Copenbarger, supra*, 215 Cal.App.4th at p. 1242.) As relevant here, the complaint alleged a declaratory relief cause of action against the sublessor alleging a controversy existed " 'concerning [the parties'] respective rights and duties arising under' " the underlying lease, the sublease, and

25

related documents. (*Ibid*.) Shortly after the filing of the complaint, the sublessor filed an unlawful detainer action against the sublessee and brought an anti-SLAPP motion as to the sublessee's complaint, which the trial court granted. (*Id*. at p. 1240.)

In reversing, the *Copenbarger* court concluded that the declaratory relief cause of action did not arise from protected litigation activity. (*Copenbarger, supra*, 215 Cal.App.4th at pp. 1245–1248.) The Court of Appeal reasoned in part: "The gravamen of the declaratory relief cause of action is a dispute over the parties' respective rights and obligations under certain terms of the Ground Lease and the Sublease. The first cause of action sought a declaration on several issues arising under the Sublease . . . ." (*Id*. at p. 1247.) The *Copenbarger* court explained that while the "30–day notice constituted evidence these lease interpretation issues were genuinely in dispute," and "demonstrat[ed] the existence of a conflict over the rights and obligations of the parties to the Sublease," the declaratory relief cause of action was "not based on service of that notice." (*Ibid*.) The court concluded, "The first cause of action, for declaratory relief, does not attack the service of the three-day notice or the unlawful detainer action itself." (*Ibid*.)

The same may be said as to the declaratory relief cause of action in this case. The challenged declaratory relief cause of action notes that "[a]n actual controversy has arisen and now exists between [Cardenas] and [Continental] concerning their respective rights and duties in connection with the Operative Lease." Thus, as in *Copenbarger*, the basis of *this* cause of action[7] is the allegation of the existence of dispute related to contractual terms in need of resolution, rather than an attack on the filing of the litigation and the

---

7    We have explained in connection with Cardenas's appeal that it has not demonstrated the same is true with respect to the stricken causes of action.

26

prefatory steps to such litigation. (See *Copenbarger, supra*, 215 Cal.App.4th at p. 1245 ["[a] complaint arising out of or based on the dispute or conduct underlying the unlawful detainer action is not subject to a special motion to strike."]) We apply that principle here and agree with the trial court that the declaratory relief cause of action arose from the *disputes* that led to litigation activity, rather than the *filing of the litigation* to resolve that dispute.

We are not persuaded by Continental's argument that a different result is required because the declaratory relief cause of action "incorporated by reference 52 paragraphs of preceding allegations of misconduct by Continental." Nor are we persuaded by Continental's contention that Cardenas's discovery responses, which identified "pre-litigation communications" as the evidentiary basis for its claims, demonstrates any error. Such allegations and discovery responses, with respect to the declaratory relief cause of action, merely "constituted evidence these lease interpretation issues were genuinely in dispute," and "demonstrat[ed] the existence of a conflict over the rights and obligations of the parties." (*Copenbarger, supra*, 215 Cal.App.4th at p. 1247.) While Continental correctly states in its brief that the discovery responses "revealed that the *documentary foundation*" (italics added) for the declaratory relief cause of action was litigation-related activity, the *documentary foundation* for a cause of action may be distinct from the legal basis thereof. (See *WasteXperts, supra*, 103 Cal.App.5th at p. 660 [noting that prelitigation related activity may provide " 'evidentiary support' " for a cause of action without being " 'a basis of liability' "].)

Nor is this case governed by *CKE Restaurants, Inc. v. Moore* (2008) 159 Cal.App.4th 262, 269 (*CKE*) on which Continental relies. In *CKE*, a restaurant brought a declaratory relief action to determine whether its

products complied with Proposition 65, after having received a "Proposition 65 notice"[8] from defendants. In concluding that the restaurant's action arose from the defendants' protected activity of filing the notice, the Court of Appeal explained that, without the filing of the notice, there would have been no basis for the suit. (*CKE*, at p. 271 ["CKE's action arose *entirely* from the filing of the Proposition 65 notice. The trial court recognized this, stating, 'without the Notice, there would have been no actual, present controversy, and no controversy at all.' "].) The same is not true in this case. Even without the litigation related activity referenced in the first amended complaint, many of the disputes underlying that activity would remain. For example, the first amended complaint alleges that Continental had made "demands to [Cardenas] about the purported condition of the Premises, including unsupported claims of the existence of mold throughout the Premises as well as supposed unpermitted improvements and repairs to the Premises," and that "many of these alleged problems constitute violations of the relevant lease agreement." Cardenas further alleged that "none of [Continental's] demands amount to breaches of the lease agreement at issue or have any factual basis," that the parties continue to have these disputes, and that "[Cardenas] seeks the Court's intervention to confirm the parties' obligations under the applicable lease for the Premises and to prevent future harm to Plaintiff."

Thus, this case is unlike *CKE* in which a declaratory relief cause of

---

[8]     The *CKE* court explained that "Proposition 65 prohibits a business from knowingly and intentionally exposing an individual to a chemical known to the state to cause cancer, without providing a warning to the consumer. . . . [¶] The potential violator must be given 60 days' notice of a suspected violation before a lawsuit can be filed." (*CKE, supra,* 159 Cal.App.4th at pp. 265–266.)

action triggered anti-SLAPP protection since the *only* dispute forming the basis of the cause of action arose from protected activity. (*CKE, supra,* 159 Cal.App.4th at p. 271.) Rather, this case is akin to *WasteXperts, supra,* 103 Cal.App.5th 652 in which the Court of Appeal explained that a declaratory relief cause of action did *not* arise from protected prelitigation communications. (*Id.* at p. 661 [rejecting defendant's argument that "without the [protected] communications, there would be 'nothing left in the complaint' "]; see also *Gotterba, supra*, 228 Cal.App.4th at p. 42 ["If the threats of litigation were removed from [defendant's] demand letters, the same dispute would exist regarding the terms of the termination agreement, i.e., [plaintiff] seeks to publish a book concerning his relationship with [a second defendant]"].)

Accordingly, we conclude the trial court properly denied Continental's anti-SLAPP motion with respect to Cardenas's declaratory relief cause of action on the basis that Continental failed to carry its burden of demonstrating that the cause of action was based on protected activity.[9]

---

[9] In light of our holding that the trial court properly concluded that Continental did not meet its threshold burden of showing the declaratory relief cause of action was based on protected activity, Cardenas was not required to demonstrate a probability of prevailing on the merits of this cause of action and we express no opinion on the merits of its claim.

## DISPOSITION

The trial court's order granting in part and denying in part Continental's anti-SLAPP motion is affirmed.  Each party is to bear its own costs on appeal.


                                                    BUCHANAN, J.

WE CONCUR:


McCONNELL, P. J.


IRION, J.